**Marvin KLITZKE, Plaintiff–Appellant,**

v.

**STEINER CORPORATION, dba American Linen, Defendant–Appellee.**

No. 95–36084.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 1997.

Decided April 11, 1997.

---

David C. Force, Eugene, Oregon, for plaintiff-appellant.

Regina Hauser, Schwabe, Williamson & Wyatt, Portland, Oregon, for defendant-appellee.

Before: FLETCHER and TASHIMA, Circuit Judges, and SCHWARZER,* Senior District Judge.

SCHWARZER, Senior District Judge:

■ In this appeal, we decide whether the Fair Labor Standards Act's ("FLSA") exemption from overtime wage regulation, *see* 29 U.S.C. § 213(b)(1), which applies to drivers whose qualifications and work hours are subject to regulation by the Secretary of Transportation, *see* 49 U.S.C. § 3102, applies to a motor private carrier whose primary business is not transportation and whose route is entirely intrastate but whose deliveries include items special ordered by the carrier for customers from out-of-state vendors.

Marvin Klitzke brought this action against the Steiner Corporation, dba American Linen, to recover overtime pay under 29 U.S.C. § 207(a). Klitzke is a route salesman for Steiner, which provides laundry and uniform rental and sale services in Eugene, Oregon. Klitzke sells Steiner's services and delivers linens and garments to Steiner's customers. Some garments sold by Steiner come out of its stock, and others are ordered for customers from out-of-state vendors. Those vendors ship to Steiner's warehouse via common carrier; once at the warehouse, the items are

unloaded, labeled for the customers, loaded onto Steiner's trucks, and delivered by Steiner's route salesmen. Klitzke's route is entirely within Oregon, but over half of his deliveries are items received from out of state.

■ The district court granted Steiner's motion for summary judgment on the ground that Klitzke was exempt from the FLSA under 29 U.S.C. § 213(b)(1). We have jurisdiction of Klitzke's appeal under 28 U.S.C. § 1291 and 29 U.S.C. § 216(b); we review the district court's grant of summary judgment *de novo. Jones v. Union Pacific R.R.,* 968 F.2d 937, 940 (9th Cir.1992).

## DISCUSSION

### I. THE STATUTORY SCHEME

■ Klitzke's claim is for unpaid overtime during 1993 and 1994. Steiner does not dispute the overtime hours but contends that it was not subject to the requirements of the FLSA. The FLSA requires employers to pay overtime wages (1.5 times the regular hourly wage) to any employee who works more than forty hours in a week. 29 U.S.C. § 207(a). Section 213(b)(1) provides, however, that employees whose qualifications and maximum hours of driving are subject to regulation by the Secretary of Transportation (the "Secretary") under the Motor Carrier Safety chapter of the Interstate Commerce Act are exempt from the overtime provisions of § 207(a):

(b) The provisions of section 207 of this title shall not apply with respect to

(1) any employee with respect to whom the Secretary of Transportation *has power to* establish qualifications and maximum hours of service pursuant to the provisions of section 3102 of title 49;[2]

---

* Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

2. The ICC Termination Act, Pub.L. No. 104–88, 109 Stat. 861 (1995), and a subsequently enacted revision of Title 49, Pub.L. No. 104–287, 110 Stat. 3388 (1996), reorganized the Interstate Commerce Act, eliminating some provisions and moving many of those that remain to other places in Title 49. Those changes do not affect the outcome of this case, but in our discussion of

Title 49, we nevertheless refer to the statutory provisions by the section numbers in effect in 1993 and 1994, when Klitzke's alleged property rights accrued. *Cf. Brett v. City of Eugene,* 130 Or.App. 53, 880 P.2d 937, 939–40 (1994) (stating that accrued leave—received in lieu of overtime pay—vests immediately upon completion of the overtime). The provisions' current locations in the Code are provided in accompanying footnotes.

29 U.S.C. § 213(b)(1)(1992) (emphasis added); *Baird v. Wagoner Trans. Co.*, 425 F.2d 407, 410 (6th Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59 (1970); *see Levinson v. Spector Motor Serv.*, 330 U.S. 649, 661–62, 67 S.Ct. 931, 938, 91 L.Ed. 1158 (1947); *Reich v. American Driver Serv., Inc.*, 33 F.3d 1153, 1155 (9th Cir.1994) (stating that "a motor carrier cannot be subject to the jurisdiction of both the Secretary of Labor and the Secretary of Transportation"). The § 213(b)(1) exemption is construed narrowly, *see Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960), and the employer seeking the exemption has the burden of proving entitlement. *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 209, 86 S.Ct. 737, 748–49, 15 L.Ed.2d 694 (1966); *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir.1983).

■ For the statutory exemption under § 213(b)(1) to apply, the Secretary need not actually regulate the driver or his employer; it applies whenever the Secretary has the *authority* to regulate a driver's hours and safety. *Southland Gas. Co. v. Bayley*, 319 U.S. 44, 47–48, 63 S.Ct. 917, 919, 87 L.Ed. 1244 (1943); *Martin v. Coyne Int'l Enter., Corp.*, 966 F.2d 61, 63 (2d Cir.1992). The Motor Carrier Safety chapter authorizes the Secretary to:

prescribe requirements for—

(1) qualifications and maximum hours of service of employees of . . . a motor carrier; and

(2) qualifications and maximum hours of service of employees of . . . a motor private carrier, when needed to promote safety of operation.

49 U.S.C. § 3102(b).[3] Subsection (2) applies to Klitzke because he is an employee of a motor private carrier, i.e., one who transports "property . . . for sale, lease, rent, or bailment." 49 U.S.C. § 10102(13)(C).[4]

## II. KLITZKE'S CONTENTIONS TO AVOID THE EXEMPTION

Section 3102(b)(2) therefore removes Klitzke from coverage under the FLSA unless the exemption is limited either by some other statutory provision or by specific regulatory exclusions. *See Jones v. Giles*, 741 F.2d 245, 249 (9th Cir.1984). Klitzke claims that he falls within a number of such exceptions.

### A. *49 U.S.C. § 10524* [5]

■ Klitzke contends that 49 U.S.C. § 10524 exempts him from regulation by the Secretary. That section, located in the subchapter defining the regulatory jurisdiction of the Interstate Commerce Commission ("ICC") over motor carriers, provides:

The Interstate Commerce Commission does not have jurisdiction under this subchapter [49 U.S.C. §§ 10521–10562] over the transportation of property by motor vehicle when—

(1) the property is transported by a person engaged in a business other than transportation; and

(2) the transportation is within the scope of, and furthers a primary business (other than transportation) of the person.

49 U.S.C. § 10524. The provision exempted carriers such as Steiner, who was not in the transportation business, from regulation by the ICC; it did not provide an exemption from regulation by the Secretary of Transportation. The subchapter to which it refers deals only with regulation by the ICC. *See* 49 U.S.C. § 10521. Thus, "[t]he section [§ 10524] merely exempts motor private carriers from the licensing, permit, and certificate requirements imposed upon motor carriers by the ICC pursuant to 49 U.S.C. §§ 10921–10935; it does not serve to deprive the [Department of Transportation] of its power to regulate the qualifications and maximum hours of service of employees of motor private carriers pursuant to 49 U.S.C. § 3102(b)(2)." *Friedrich v. U.S. Computer Serv.*, 974 F.2d 409, 413 (3d Cir.1992).

While it is true that § 3102(a), the source of the Secretary of Transportation's regulatory authority, defines the transportation to which it applies by cross-reference to

---

**3.** 49 U.S.C. § 3102(b) has been recodified at 49 U.S.C. § 31502(b).

**4.** 49 U.S.C. § 10102(13) has been recodified at 49 U.S.C. § 13102(13).

**5.** 49 U.S.C. § 10524 has been recodified at 49 U.S.C. § 13505(a).

§ 10521, *see* 49 U.S.C. § 3102(a) (stating that § 3102 "applies to transportation ... described in section[ ] 10521 ... of this title"), it incorporates no limitations on the Secretary's power to prescribe safety requirements for employees of motor private carriers.

### B. *Regulatory Exemption Pursuant to 49 C.F.R. § 395.1*

 49 C.F.R. § 395.1 specifies the types of carriers and drivers to whom the Secretary's hours of work regulations apply. Klitzke contends that the Secretary's failure to include his job category in section 395.1 frees him from the Secretary's jurisdiction and thereby preserves FLSA coverage. This claim is meritless—the Secretary's decision not to exercise his regulatory authority over a category of carriers does not exempt them from his authority. *See Southland Gasoline Co. v. Bayley,* 319 U.S. 44, 47–48, 63 S.Ct. 917, 919, 87 L.Ed. 1244 (1943); *Martin v. Coyne Int'l Enter. Corp.,* 966 F.2d 61, 64 (2d Cir.1992). FLSA coverage is preserved only when the Secretary grants a specific exemption from regulation or acknowledges his lack of authority to regulate. *Jones v. Giles,* 741 F.2d 245, 249 (9th Cir.1984); *Newhouse v. Robert's Ilima Tours, Inc.,* 708 F.2d 436, 439–40 (9th Cir.1983); *Brock v. Pacific Vacuum Truck Co.,* 1987 WL 13666, at *14 (C.D.Cal.1987) (stating that "when employees are placed by affirmative action of the DOT ... beyond the scope of the regulations promulgated under the relevant power, the employees are no longer subject to the relevant power"). This is not such a case: the statutory provisions pursuant to which the Secretary promulgated section 395.1, *see* 49 U.S.C. §§ 3102, 31133, 31136, do not bar the Secretary from regulating Klitzke, and the Secretary has never renounced his authority. Thus, the power to regulate Klitzke existed, even if it were unexercised.

### C. *The Secretary's Authority over Intrastate Transportation of Items Originating Out of State*

 Finally, Klitzke contends that because his route is entirely within the state of Oregon, his hours of work are not subject to regulation by the Secretary. To fall within the Secretary's regulatory authority, transportation must be

(1) between a place in—

 (A) a State and a place in another State;

 (B) a State and another place in the same State through another State....

49 U.S.C. § 10521(a)(1)(A), (B);[6] *see Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 570, 63 S.Ct. 332, 336, 87 L.Ed. 460 (1943) (stating that, in writing the act, "Congress did not exercise ... the full scope of the commerce power"); *Walling v. American Stores Co.,* 133 F.2d 840, 845 (3d Cir.1943); *see* 29 C.F.R. § 782.7(a). But this jurisdiction necessarily extends to transportation within a state that "is a practical continuity of movement from the manufacturers or suppliers without the state, through [a] warehouse and on to customers whose prior orders or contracts are being filled...." *Walling v. Jacksonville Paper Co.,* 317 U.S. at 569, 63 S.Ct. at 336; *IBT v. ICC,* 921 F.2d 904, 907 (9th Cir.1990) (citing *Texas & N.O. R.R. v. Sabine Tram Co.,* 227 U.S. 111, 122, 33 S.Ct. 229, 233, 57 L.Ed. 442 (1913)). Whether any particular shipment is interstate is determined on an ad hoc basis:

> Whether transportation is interstate or intrastate is determined by the essential character of the commerce, *manifested by shipper's fixed and persisting transportation intent at the time of the shipment,* and is ascertained from all of the facts and circumstances surrounding the transportation.

*Southern Pac. Trans. Co. v. ICC,* 565 F.2d 615, 617 (9th Cir.1977) (citation omitted) (emphasis in original).

In this case, Steiner receives its customers' orders and immediately places them with the out-of-state vendors. The orders are placed for specific customers, but it is Steiner, rather than its customers, which is the customer of the out-of-state vendors. The vendors ship the goods to Steiner by common carrier. Once Steiner receives its shipments, it unloads, catalogs, relabels, and distributes them—usually within two days.

In *Jacksonville Paper* the Supreme Court held:

---

**6.** This provision has since been recodified at 49 U.S.C. § 13501.

A temporary pause [in a warehouse] does not mean that they [the goods] are no longer "in commerce" within the meaning of the [motor carrier act]....

... The contract or understanding pursuant to which goods are ordered, like a special order, indicates where it was intended that the interstate movement should terminate.

317 U.S. at 568–69, 63 S.Ct. at 335–36. In that case, the company placed special orders with out-of-state vendors for its own customers. The vendors used common carriage to deliver the goods to the carrier's terminal, where Jacksonville Paper's trucks would pick up the ordered items. The trucks would then take them to Jacksonville Paper's own warehouse, where they were "unloaded from the trucks, brought into the warehouse, checked, reloaded, and sent on to the customer during the day or as early as convenient." *Id.* at 567, 63 S.Ct. at 335. The Supreme Court concluded that "there [was] a practical continuity of movement of the goods until they reach[ed] the customers for whom they [were] intended," *id.* at 568, 63 S.Ct. at 335, and that Jacksonville Paper employees engaged in the final stages of distribution were therefore covered by the motor carrier act.

■ The rule of *Jacksonville Paper* governs here: even though the shippers did not know the goods' ultimate destinations, the orders were placed and the goods were shipped to satisfy contracts between Steiner and its customers that specified a final place of delivery within Oregon *other than the Steiner warehouse.* The goods were therefore in "continuous transportation" until delivered to Steiner's customers. *See Reich v. American Driver Serv., Inc.,* 33 F.3d 1153, 1155 n. 3 (9th Cir.1994); *see also Shew v. Southland Corp.,* 370 F.2d 376, 380 (5th Cir. 1966) (holding that Southland's intrastate shipment to its retail outlets of goods that it had ordered from out-of-state vendors and had received by common carriage was subject to regulation by the Secretary of Transportation).

## CONCLUSION

The Secretary of Transportation had authority to "prescribe requirements for ... qualifications and maximum hours of service" for Steiner's employees. *See* 49 U.S.C.

§ 3102(b)(2). Klitzke therefore is not covered by the FLSA, regardless of whether the Secretary exercised his authority. *See* 29 U.S.C. §§ 207(a), 213(b)(1).

The judgment is AFFIRMED.