Timothy P. McGUIGGAN, William D. Robinson and Jeffrey C. Price, on behalf of themselves and all other employees of CPC, Plaintiffs,

v.

CPC INTERNATIONAL, INC., Defendant.

No. 97 Civ. 7241(CM).

United States District Court, S.D. New York.

Jan. 31, 2000.

471

Scott Alexander Thornton, Thornton & Partners, New Hampton, NY, for plaintiffs.

Patrick W. Shea, Robert A. Horowitz, Paul, Hastings, Janofsky & Walker, LLP, Stamford, CT, for defendant.

## MEMORANDUM ORDER GRANTING DEFENDANT SUMMARY JUDGMENT

McMAHON, District Judge.

*Summary*

Plaintiffs Timothy P. McGuiggan, William D. Robinson and Jeffrey Price are former distributors of Thomas' English Muffins for Defendant CPC. They seek relief here, for themselves and on behalf of others similarly situated,[1] for overtime wages under the Fair Labor Standards Act of 1938, § 1 *et seq.*, as amended, 29 U.S.C. § 201 *et. seq.* ("FLSA").

Defendant CPC has moved for summary judgment on three grounds: 1) that this Court's decision in *Smith v. CPC Int'l, Inc.*, 1998 WL 50204 (S.D.N.Y. Feb.6, 1998), determined the Plaintiffs not to be employees of CPC, and that Plaintiffs are thus barred under both res judicata and collateral estoppel from pursuing the claim and issue in this litigation; 2) that even if not barred, Plaintiffs are not entitled to protection under the FLSA because they were independent contractors, not employees, of CPC; and 3) even if it is determined that Plaintiffs were employees within the meaning of the FLSA, they are exempted from the overtime provisions of the Act under either its "motor carrier" or "outside salesman" exceptions.

For the reasons stated below, I grant Defendant's motion for summary judgment on the ground that, as a matter of law, Plaintiffs were not entitled to protection under the FLSA, and thus fail to state a claim against CPC.

## I. *Factual Background*

The following are the facts, viewed in the light most favorable to the Plaintiffs:

Plaintiffs were distributors of S.B. Thomas English Muffins along various distribution routes located entirely within New York state: McGuiggan from May 1991 through August 1997; Price from March 1997 until July 1997; and Robinson from December 1978 until July 1997. S.B. Thomas, Inc. is a wholly owned subsidiary of Defendant, CPC. (CPC changed its corporate name to "Bestfoods, Inc." in 1998.) As distributors, Plaintiffs placed orders with CPC for the baked goods, which were produced at a CPC baking facility in Totowa, New Jersey. The products were delivered by CPC, in CPC-owned trucks, to distribution depots in New York, where Plaintiffs picked up the goods and reloaded them onto their own trucks. From there, Plaintiffs delivered the goods to retailers on their routes, picked up stale product, and checked with the retailers to see if any changes in their orders needed to be made.

Robinson and Price paid money for their routes from predecessor distributors. McGuiggan did not pay for his route. At the time they began their distributorships, the Plaintiffs each received substantially the same letter of introduction from CPC. This letter outlined the terms of the distributorship and the relationship between the distributors and CPC. Plaintiffs used their own privately owned or leased trucks to carry out their duties as distributors, and insured these trucks at their own expense. They were free to employ others to conduct the distributorship services for them.

The Plaintiffs' day-to-day routine as distributors consisted of the following duties:

1. Call in an order for products to CPC's Totowa office two to three days in advance of the delivery;

2. Drive to the local depot in the morning to pick up and sort that day's order for delivery;

3. Drive to each of the store locations along their respective routes;

4. Service the stores, which required them to:

---

**1.** Plaintiffs brought this suit as a putative class action. Because no motion has been made as required under Fed.R.Civ.P. 23, I decline to certify this as a class and proceed with this motion as an action brought by individual Plaintiffs.

- determine what product needed to be replenished based on the previous day's sales;
- pull the appropriate order from the truck;
- place the new product on the store shelves in accordance with CPC guidelines (e.g. placing the English Muffins "broadside");
- remove stale product and place it in the truck;
- rotate older product forward;
- from time to time, place promotion signs on the product.

5. Drop off stale product—at either the depot or a "thrift store"—for return when appropriate.

In addition, once a week, the distributors would complete paperwork that tallied their sales and determined the commission the distributors would receive from CPC. The commission on the sales made on the delivery route was the distributor's sole remuneration from CPC. On average, the distributors worked 50–58 hours per week.

CPC established the geographic routes; distributors were not allowed to distribute products outside the established route. Distributors were, however, permitted—indeed encouraged—to pursue additional accounts within their sales routes.

CPC maintained district sales managers who were responsible for overseeing the work of the distributors at each depot. District managers monitored the volume of sales and returns on each route and were empowered to make changes to the distributors' product orders whenever they felt necessary. In the case of Robinson and Price, the district sales manager would, for example, increase distributor orders at the end of each quarter if sales volume had not met CPC's sales goals for the quarter. District managers were also responsible for checking on the performance of distributors to ensure that the routes were being maintained according to CPC guidelines and standards. From time to time, district managers sent memoranda to the distributors concerning upcoming promotions, product policies and other issues affecting the level of sales or returns.

Although distributors were free to set their own hours, they were reminded to meet the "performance standards" that CPC required, which included delivering goods five days a week to stores on their routes. Occasionally, CPC district managers would intervene to ensure that deliveries to specific retail accounts were made at specific times. The remedy for delivery scheduling problems sometimes included removing a store from the distributor's route. Individual distributors were not permitted to run their own promotions, but were required to run promotions initiated by CPC. CPC provided all signage, promotional materials and displays for products on the routes and set prices for sales at the large chain stores.

For the purpose of federal and state income taxes, the distributors took special deductions generally associated with self-employment, including the costs associated with their trucks including lease costs, insurance, gas and maintenance. (Only in the 1996 tax year did Price and Robinson file federal returns in which they described themselves as "employees" of CPC.) For its part, CPC treated the distributors as self-employed for tax purposes. CPC did not restrict the distributors' freedom to be employed elsewhere or to own other businesses. For part of the time he was a distributor, Plaintiff McGuiggan worked as a student-teacher. He also hired a helper to carry out his distributor duties during stretches of time when he was unavailable to work.

In February 1997, CPC decided to offer to certain of the distributors the right to purchase equity interests in the routes they serviced. Any distributor who did not choose to purchase the rights to his route would find his relationship with CPC terminated. Plaintiffs Robinson and Price were offered the right to purchase equity in their routes, but declined. Plaintiff McGuiggan was not extended an offer. All

three Plaintiffs' distributorships were thereafter terminated. After their terminations, each plaintiff received unemployment benefits from the State of New York, under which they were classified as employees of CPC. (Robinson Dep. at 105, attached as Ex. 3 to Bitar Decl.; Cplt. ¶¶ 2–4).

## II. *Procedural Posture*

### A. *The Smith Case*

Like the famous muffins delivered by the Plaintiffs, this case contains many procedural and substantive "nooks and crannies,"[2] since CPC's decision to sell its routes prompted several separate, but related, law suits.

On March 7, 1997, Plaintiffs Robinson and Price, along with lead plaintiff Michael D. Smith, brought suit against CPC based on (I) violation of the Employee Retirement Security Income Act ("ERISA"), 29 U.S.C. § 1001 *et seq.;* (II) violation of the New York Franchise Sales Act, N.Y.Gen. Bus.L. § 680 *et seq.;* (III) violation of the New Jersey Franchise Practices Act, N.J.Stat.Ann. § 56:10–1 *et seq.;* (IV) & (V) breach of contract; (VI) breach of implied covenant of good faith and fair dealing; and (VII) negligent misrepresentation. Plaintiffs also sought to enjoin CPC from terminating their routes. On May 1, 1997, the injunction was denied. *See Smith v. CPC Int'l Inc., et al.,* No. 97 Civ. 1547, slip op. at 5 (S.D.N.Y.) (May 1, 1997). Defendant CPC moved for dismissal on claims I, II, III, and VII and for summary judgment on claims IV, V and VI.

Claim I was styled as a class action challenging CPC's benefit plans on the ground that, as "employees," plaintiffs should not have been excluded from the plans. Judge Jones of this Court dismissed that claim on the grounds that Plaintiffs (1) failed to show that CPC was a fiduciary to them within the meaning of ERISA, and (2) failed to allege any discriminatory or harassing behavior by CPC to deny them vested employee benefits. Claim II, brought under the New York Franchise Act was dismissed without opposition by Plaintiffs. *See Smith, et. al., v. CPC Int'l Inc.,* 1998 WL 50204 (S.D.N.Y. Feb.6, 1998). Claim III, brought under the New Jersey Franchise Act was dismissed on separate grounds.; *See Smith, et. al. v. CPC Int'l Inc., et al.,* 1998 WL 85863 (S.D.N.Y. Feb.27, 1998).

In addressing Claim VII, negligent misrepresentation, Judge Jones noted that Plaintiffs relied on the argument "that CPC told them they were independent distributors, rather than employees, and that CPC failed to treat them as employees for tax purposes." *Smith,* 1998 WL 50204 at *4. She noted that a misrepresentation claim could only be made out if the distributors were, in fact, employees and not independent distributors. *See id.* She concluded that Plaintiffs' own complaint failed to allege any facts to support Plaintiffs' assertion that they were employees rather than independent distributors whose relationship with CPC was defined by the parties' arms-length contractual agreement. For that reason, the negligent misrepresentation claim was also dismissed. *See id.*

Claim IV alleged that CPC breached its contracts with the *Smith* plaintiffs by initiating the distributorship sale and subsequently terminating the parties' business relationship. Claim V alleged that CPC breached its contract with Smith by terminating the New Jersey portion of Smith's route in 1993. The Court granted summary judgment to CPC on these contract claims, on the ground that the terms of the introductory letters the distributors had received when they purchased their routes from the predecessor distributors were unambiguous and fully integrated contracts.

---

2. The term "cranny" comes from the Middle English, *crani,* and is defined as "a small opening, as in a wall or rock face." *Webster's II New Riverside Dictionary* (1994) at 324.

The American public has, of course, through Defendant's television advertising, come to think of crannies as a place "to hold the melted butter."

The letters confirmed that the plaintiffs were "independent distributors," who would receive compensation by commission payments and who did "not have a franchise to deliver" CPC's products. *Smith,* 1998 WL 85863 at *1. The letters also explained that CPC did not "assign territory on a permanent basis" and that the parties' relationship was contingent on CPC's "satisfaction with this arrangement in the future." *Id.*

Because she found the agreements to be unambiguous, Judge Jones also held that the parol evidence rule prevented consideration of any evidence of other prior or contemporaneous agreements. She thus found that the only material issue on the breach of contract claim was whether CPC acted for "business reasons" in initiating the distributorship sale, an issue which was uncontradicted by plaintiffs. Because Claim VI, breach of implied covenant of good faith and fair dealing, relied on substantially the same arguments that plaintiffs made under the first two contract claims, Judge Jones granted summary judgment to CPC on that claim as well. She held that no violation of the covenant of good faith could be predicated on a claim that CPC misled plaintiffs as to their employment status throughout the business relationship, because it had not done so (see above). She further held that, CPC could not have breached any implied covenant of fair dealing with respect to treating them as employees, since she had ruled as a matter of law that they were not employees. *See Smith,* 1998 WL 85863 at *5.

The result of this Court's two decisions in *Smith* was dismissal of the state and federal statutory claims and the negligent misrepresentation claims, and summary judgment for Defendant on the three breach of contract claims.

Plaintiffs appealed the Court's dismissal of their ERISA, negligent misrepresentation and breach of contract claims. The Second Circuit affirmed the dismissal of the ERISA claim, holding that the "district court properly found that CPC was not a fiduciary as to plaintiffs and did not discharge, harass, or discriminate against plaintiffs to deny them vested employee benefits." *Smith v. CPC Int'l, Inc.,* Summary Order, Docket No. 98–7503, (2d Cir. April 16, 1999). It likewise affirmed this Court's dismissal of the negligent misrepresentation claim based on the Smith plaintiffs' failure "to point to a misrepresentation in their agreement with CPC that would give rise to a negligent misrepresentation claim." *Id.*

However, the Second Circuit reversed and remanded the grant of summary judgment on the breach of contract claim. *See Smith v. CPC,* 177 F.3d 110 (2d Cir.1999). There, the Second Circuit outlined the issue on appeal:

> The district court correctly held that the introductory letter, acted upon by the plaintiffs without objection, constituted an integrated agreement not to be altered by parol evidence. The plaintiffs contend that the district court erred in failing to recognize that the contract allowed CPC to terminate only for good cause. CPC concedes on appeal that only for-cause termination would be permissible, but asserts that the court, in fact, identified good cause when it concluded that the undisputed evidence demonstrated that CPC had terminated on account of "business reasons." *Id.* at 113.

Because "[a]t the time of the motion for summary judgement CPC had not presented undisputed facts showing it had good cause to terminate the distributorship," the Second Circuit concluded that there remained at summary judgment "a factual dispute as to whether CPC had breached the agreements and done so in bad faith to enrich itself." *Id.* The Court reiterated dicta from *Petereit v. S.B. Thomas, Inc.,* 63 F.3d 1169 (2d Cir.1995), a case brought under Connecticut franchise law, that concerned CPC's termination of Connecticut distributors who chose not to purchase their routes. In *Petereit,* the Second Cir-

cuit had ruled that "CPC had the right to alter territory, but under the terms of the agreement 'may not terminate a distributor without good cause.'" *Id.*

On remand from the Second Circuit, the sole issue for this Court to decide in *Smith* is whether CPC has shown that it had "good cause" to terminate the distributorships.

### B. *The McGuiggan Case*

This case was filed on September 29, 1997, by McGuiggan and two of the named plaintiffs in *Smith* (Price and Robinson) on behalf of themselves and all other employees of CPC, as a putative class action. Defendant CPC moved for summary judgment on the basis that: 1) the result in Smith bars Plaintiffs—under both res judicata and collateral estoppel—from making a claim that they are employees within the meaning of the FLSA; 2) even if not barred, Plaintiffs state no claim as a matter of law under the FLSA, because they were independent contractors, not employees of CPC, and are therefore not covered by the overtime provisions of the FLSA; and 3) even if found to be employees, Plaintiffs would fall within the "motor carrier" and "outside salesman" exceptions to the FLSA. These are the only issues currently before the Court on the motion for summary judgment.

### III. *The Legal Argument*

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). It is the non-moving party's burden to "demonstrate to the court the existence of a genuine issue of material fact." *Lendino v. Trans Union Credit Info Co.,* 970 F.2d 1110, 1112 (2d

Cir.1992). In opposing summary judgment, a party may not rest upon unsupported allegations or denials, or simply claim without support that evidence adduced by the movant in support of the motion is not credible. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Mycak v. Honeywell, Inc.,* 953 F.2d 798, 801–802 (2d Cir.1992).

### A. *Preclusive Effect of the Smith Case*

Defendants argue that Plaintiffs are barred, under both res judicata and collateral estoppel, from relitigating the issue of their status as employees based on this Court's holdings and the Second Circuit's affirmance of all but one of the claims in *Smith.* Judge Jones' holdings in *Smith* concerning plaintiffs' status as independent contractors, they argue, were affirmed by the Second Circuit, and thus preclude the FLSA claim here. Plaintiffs contend in response that the finality requirement has not been met, and that neither res judicata nor collateral estoppel bar the claim here because the *Smith* case has been remanded and is currently pending before this court.[3]

Plaintiffs are correct that the *Smith* ruling is not preclusive here, but for a different reason. While the Second Circuit's affirmance of the District Court's decision renders the matter sufficiently "final" for former adjudication purposes, see *Lummus Co. v. Commonwealth Oil Refining,* 297 F.2d 80 (2d Cir.1961), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962), the standard for determining "employee" status under the FLSA differs from that under the common law or ERISA. Thus, the precise question raised

---

**3.** Plaintiff also argues that because CPC did not plead res judicata as an affirmative defense in its answer it thereby waived it. CPC is correct in arguing, however, that it could not have raised res judicata as an affirmative defense because, when CPC filed its Answer, a final judgment had not been entered in *Smith.*

Moreover, absent a showing by Plaintiffs that they were prejudiced by CPC's failure to raise the defense earlier, CPC is entitled to raise it for the first time at summary judgment. *See Devito v. Pension Plan of Local 819 I.B.T. Pension Fund,* 975 F.Supp. 258, 263 (S.D.N.Y. 1997) (citations omitted).

in McGuiggan's action has not yet been addressed by any court.

### 1. Res Judicata

Defendant argues that Plaintiffs should be barred because they could have brought their FLSA claim in the *Smith* action, but chose not to. However, because no final judgment has been entered in Smith, the FLSA claim here cannot be precluded under res judicata.

 Under the doctrine of res judicata, a subsequent action will be barred where a claim between the parties has been litigated and decided. In determining whether res judicata applies, a court may consider whether:

(1) the prior decision was a final judgment on the merits;

(2) the litigants were the same parties;

(3) the prior court was of competent jurisdiction; and

(4) the causes of action were the same. *See Corbett v. MacDonald Moving Services, Inc.,* 124 F.3d 82, 87–88 (2nd Cir.1997); *In re Teltronics Services, Inc.,* 762 F.2d 185, 190 (2d Cir.1985).

The second and third elements are met here. Plaintiffs Robinson and Price were named plaintiffs in the *Smith* action, which, like the case at bar, was filed as a putative class action, and this court was competent to hear those claims.

Defendant argues that elements one and four are also met. The partial affirmances of summary judgment dismissing certain claims in *Smith* represent a final judgment on the merits, and the causes of action are the same. Even if the causes of action are not identical, Defendant argues, Plaintiffs should be barred under res judicata because they could have joined the FLSA claim with the earlier claims in *Smith,* but

did not. *See National Labor Relations Board v. United Technologies Corp.,* 706 F.2d 1254, 1259 (2d Cir.1983) ("[A prior judgment] precludes the subsequent litigation both of issues actually decided in determining the claim asserted in the first action and of issues that could have been raised in the adjudication of that claim.").

In response, Plaintiffs argue that the finality requirement is not met, because *Smith* was remanded and is thus still pending before this Court; the causes of action that have been finally determined in *Smith* are different from the FLSA claim; and the Court can consolidate this case with what is left in *Smith* in the interest of judicial efficiency.

 A cornerstone of the res judicata doctrine is the requirement that the prior decision be final. Where a judgment has been appealed, as here, and the appeals court affirms some matters and reverses others, preclusion is limited to the matters affirmed. *See* 18 C. Wright, A. Miller & E. Cooper *Fed.Prac. & Proc.* § 4432. Thus, if the issues were identical (which, as noted above, they are not), the Second Circuit's partial affirmance and partial reversal could be relied on for the purposes of collateral estoppel. However, where a case has been remanded for further proceedings, there is no "final judgment" for res judicata purposes. *See id.*

 Because I hold that the *Smith* case is not final, I need not reach Plaintiffs' argument that the availability of consolidation of *Smith* with this case would also bar application of the res judicata doctrine.[4]

### 2. Collateral Estoppel

 Collateral estoppel, or issue preclusion, does not bar litigation of this claim. Collateral estoppel "will bar the relitigation of an issue of law or fact that was

---

4. I note, however, that Plaintiff is correct in putting forth this argument. *See, e.g., Devlin v. Transportation Communications Intern. Union,* 175 F.3d 121, (2d Cir.1999). This Court could have consolidated this case with *Smith*

at any point between September 27, 1997, the date this action was filed, and February 27, 1998, the date of Judge Jones' second order in the *Smith* case, but chose not to.

raised, litigated, and actually decided by a judgment in a prior proceeding between the parties, if the determination of that issue was essential to the judgment, regardless of whether or not the two proceedings are based on the same claim." *N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir.1983) (citations omitted).

In *Smith*, the parties litigated the issue of whether Plaintiffs were employees for the purposes of the ERISA claim and the negligent misrepresentation claim. The resolution of those issues by this Court and the Second Circuit in favor of Defendant does not, however, preclude relitigation of the issue of whether Plaintiffs were employees for purposes of FLSA.

As discussed below, the definition of employee is to be read expansively under the FLSA, and thus requires application of the "economic reality" test, which was not applied by this Court when it granted summary judgment in favor of Defendant on either the ERISA or negligent misrepresentation claims in *Smith*. *See Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581(1992) (distinguishing the standards used to determine employee status under the FLSA and those under ERISA). Paradoxical though it may seem, Judge Jones' holding that the *Smith* plaintiffs failed to adduce any evidence that they were employees for the purposes of the ERISA and negligent misrepresentation claims does not preclude the same plaintiffs from litigating the issue of employee status under the FLSA.

The FLSA was enacted to "eliminate low wages and long hours" and to "free commerce from the interferences arising from production of goods under conditions that were detrimental to the health and well-being of workers." 29 U.S.C. § 203(e), (g). To this end, the main provisions of the FLSA cover minimum wage, overtime pay standards, equal pay requirements and restrictions on child employment. The statutory protections afforded workers under the FLSA, however, are available only to persons classified as "employees." Under 29 U.S.C. §§ 201 *et. seq.*, an "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To "employ" is defined as including "to suffer or permit to work." 29 U.S.C. § 203(g). The Supreme Court has emphasized that the FLSA "defines the verb 'employ' expansively," and that it thus "stretches the meaning of 'employee' to cover some parties *who might not qualify as such under a strict application of traditional agency law principles*." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (emphasis added).

I have been advised that the IRS has determined that the plaintiffs named in this litigation were employees for the purposes of the Internal Revenue Code. While the IRS initially rejected Plaintiffs' contention that they were employees, because CPC "did not exercise direction and control over the services performed" as "evidenced by the fact that the worker was engaged in an independent enterprise requiring capital outlays or the assumption of business risks," IRS Determination Letter, Ref. NDS:SS8:16293 (Oct. 25, 1999), the IRS reversed itself on appeal. It found the distributors to be employees within the meaning of I.R.C. § 31.3121(d)–1(a)(3), because "the firm either exercised or retained the right to exercise direction and control over the delivery service." IRS Redetermination Letter, Ref. NDS:SS8:16293 (Nov. 22, 1999). In so finding, the IRS relied on an earlier Revenue Ruling that had found other bakery product distributors to be employees. *See* IRS Rev.Rul. 56–129 (1956). The redetermination was also supported by an earlier IRS General Counsel Memorandum, which held product distributors to be "statutory employees" within the meaning of the I.R.C., even where the distributor had paid for the distributorship. *See* IRS G.C.Memo. 39853 (June 21, 1991).

In addition, Plaintiffs have presented evidence that, after the termination of their distributorships, they received benefits under the New York Unemployment Compensation Law, which required New York State to make the determination that they were employees of CPC. (Comp. at ¶¶ 2–4). In determining whether an applicant qualifies as a terminated "employee," the New York Department of Labor applies the common law "right-to-control" test, which is similar to the test under which the IRS found the Plaintiffs here to be employees for the purposes of the federal tax code. *See, e.g., In re Salamanca Nursing Home, Inc.,* 68 N.Y.2d 901, 902, 508 N.Y.S.2d 939, 501 N.E.2d 588 (1986) ("Generally, control over the results produced by work and the means used to achieve those results determines whether an employer-employee relationship exists.") (citation omitted). While neither the IRS nor the New York Department of Labor determination is dispositive of this issue, IRS Revenue Rulings, GCMs and Determination Letters are generally accorded some deference by the courts. *See Fred H. McGrath & Son, Inc., v. United States,* 549 F.Supp. 491, 493 (S.D.N.Y.1982). *See also Carle Foundation v. United States,* 611 F.2d 1192, 1195 (7th Cir.1979), *cert. denied,* 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980) (revenue rulings entitled to be given "weight" by the courts.) The fact that the IRS reversed itself on appeal is some evidence that this case—like most determinations of employee or independent contractor status—is not clear cut.

█ Of course, while the distributors were arguing to the IRS that they were employees, they described themselves to this Court in the *Smith* action as independent contractors in order to make out a breach of contract claim. However, to the extent the *Smith* Court impliedly found the distributors to be independent contractors under the common law or ERISA, that determination does not preclude plaintiffs from amending a FLSA claim. In interpreting congressional labor statutes, the Supreme Court has specifically rejected the application of well-established agency law concepts of "employee" and "independent contractor." *See N.L.R.B. v. Hearst,* 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944) (defining "employee" for the purposes of the National Labor Relations Act). When interpreting the FLSA, this Court must also look beyond the common law and any fact analysis under other federal employment statutes. *See Rutherford Food Corp. v. McComb,* 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947).

█ To determine whether an individual is an employee or an independent contractor under the FLSA, the Second Circuit has applied the "economic reality test" which looks at:

1. the degree of the employer's control over the worker;

2. the worker's opportunity for profit or loss and his investment in the business;

3. the degree of skill and independent initiative required to perform the work;

4. the permanence or duration of the working relationship; and

5. the extent to which the work is an integral part of the employer's business. *See Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1058–59 (2d Cir. 1988) (citing cases).

The test is based on the "totality of the circumstances;" no one factor is dispositive. *Id.* The test is intended to ensure labor law protection is extended to all workers who are economically dependent on their employers by affording them protection as "employees," regardless of how their employers choose to define their status. *See* Lewis L. Maltby & David C. Yamada, *Beyond 'Economic Realities': The Case for Amending Federal Employment Discrimination Laws to Include Independent Contractors,* 38 B.C.L.Rev. 239, 240, (1997). In short, if the Plaintiffs were in business for themselves, they were not employees; If they were economically de-

**480**

pendent on and within the direct control of CPC, they were employees.

■ "The existence and degree of each factor [of the "economic realities" test] is a question of fact, while the legal conclusion to be drawn from these facts—whether workers are employees or independent contractors—is a question of law." *Brock*, 840 F.2d at 1059. As is frequently the case when several factors are considered in reaching a conclusion, some of these facts militate toward a finding that Plaintiffs are employees and some toward the conclusion that Plaintiffs were independent contractors. I need not engage in any extended analysis of this issue, however. Assuming *arguendo* that Plaintiffs are employees, as they contend, the complaint must be dismissed on other grounds.

## C. *Motor Carrier Exemption*

■ Defendant argues that, even if Plaintiffs were employees under the FLSA, CPC was exempted from paying overtime under the "Motor Carrier Act." Plaintiffs respond that, because Defendant failed to raise this defense in its Answer, the defense is waived. As noted above, the law is clear that, in the absence of prejudice, "a defendant may raise an affirmative defense in a motion for summary judgment for the first time." *Devito v. Pension Plan of Local 819 I.B.T. Pension Fund*, 975 F.Supp. 258, 263 (S.D.N.Y.1997) (citing cases). *See Kidder, Peabody & Co., Inc. v. IAG International Acceptance Group*, No. 94 Civ. 4725, 1999 WL 11553, at *14 (S.D.N.Y. Jan.13, 1999). Because all the material facts that shed light on whether Plaintiffs fall within the motor carrier exemption were raised during discovery, Plaintiffs are in no way prejudiced by Defendant's raising this issue for the first time at summary judgment. I therefore find the defense has not been waived. Moreover, I would permit amendment of the Defendant's answer in the interests of justice to amend the defense, even at this late point in the litigation. *See* Fed. R.Civ.P. 15(a).

The "motor carrier" exemption to the FLSA exception provides in pertinent part:

(b) The provisions of section 207 of this title [the FLSA] *shall not apply* with respect to—

(1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 [formerly section 3102] of Title 49. 29 U.S.C. § 213(b)(1) (emphasis added).

Section 31502, "requirements for qualifications, hours of service, safety and equipment standards" provides:

(b) Motor carrier and motor private carrier requirements.—The Secretary of Transportation may prescribe requirements for—

(1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and

(2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation. 49 U.S.C. § 31502.

Thus, there are two requirements for falling within the exception: (1) the employer [i.e., CPC] must be either a "motor carrier" or "motor private carrier" as defined by 49 U.S.C. § 31502(b)(2); and (2) the employees subject to the regulation [i.e., Plaintiffs] must be engaged in activities that affect the safety of operation of motor vehicles transporting property in interstate commerce. *See* 29 C.F.R. § 782.2(a).

A "motor carrier" is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(12). A "motor private carrier" is defined as:

[A] person, other than a motor carrier, transporting property by motor vehicle when—

(A) the transportation is as provided in section 13501 [formerly § 10521(a)(1) and (2) (a restatement of the definitions in § 13102) ] of this title;

(B) the person is the owner, lessee, or bailee of the property being transported; and

(C) the property is being transported for sale, lease, rent or bailment, or to further a commercial enterprise. 49 U.S.C. 13102(13). [formerly 49 U.S.C. § 10102(16) ].

Defendant argues that CPC is a motor private carrier, because (1) CPC transported its bakery products in interstate commerce; (2) the products transported were owned by CPC; and (3) the property was transported to further CPC's commercial enterprise, i.e., the sale of bakery goods. If CPC is a motor private carrier, it argues, it need not pay overtime wages to its drivers because the Secretary of Transportation has the power to regulate their hours of service under 49 U.S.C. § 31502.

Plaintiffs counter by citing the Court to a single case, *Reich v. New Mt. Pleasant Bakery,* 1993 WL 372270, *5 (N.D.N.Y. Sept. 13, 1993), for the proposition that the "motor carrier" exemption does not apply where transportation is not the primary business of the employer. Noting that CPC's primary business is the baking and selling of bakery goods, not motor transport, Plaintiffs argue that CPC cannot rely on the motor carrier exemption.

 Of course, exemptions under the FLSA are to be construed narrowly against the employer. *See Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 900 (3d Cir.1991), *cert. denied.,* 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992). The employer carries the burden of proving that an exemption applies. *Martin* at 900. However, I conclude that the exemption applies. CPC falls within the literal definition of a motor private carrier. And while

the *New Mt. Pleasant* Court held that the Secretary of Transportation did not have jurisdiction to regulate distributor/drivers like the Plaintiffs, I conclude—based on the Third and Ninth Circuits—that the esteemed Northern District judge was in error

The court in *New Mt. Pleasant* found that 49 U.S.C. § 13505 [formerly § 10524] removed the bakery drivers in that case from the jurisdiction of the Secretary of Transportation. The portion of Section 13505 that the Northern District found relevant reads:

> Neither the Secretary of Transportation nor the Board [formerly the Interstate Commerce Commission] has jurisdiction under this part over the transportation of property by motor vehicle when—(1) the property is transported by a person engaged in a business other than transportation; and (2) the transportation is within the scope of, and furthers, a primary business (other than transportation) of the person. 49 U.S.C. § 13505(a)(1)–(a)(2) [formerly 49 U.S.C. § 10524(a)(1)–(a)(2) ][5]

Interpretation of this provision under FLSA analysis was addressed squarely by the Ninth Circuit in *Klitzke v. Steiner,* 110 F.3d 1465 (9th Cir.1997). *Klitzke* involved a claim for unpaid overtime under the FLSA brought by a route salesman employed by a laundry and uniform supply company. The Ninth Circuit held that Section 13505 does not exempt employees of non-transportation companies (for example, those whose primary business is the sale and delivery of goods) from the cross application of federal labor laws, but rather limits the authority to impose certain licensing, permit and certificate requirements upon interstate motor carriers—requirements that are completely different from the Secretary of Transportation's regulation of working hours and safety. *Klitzke,* 110 F.3d at 1468–69.

5. The part of 49 U.S.C. describes the regulatory jurisdiction of the Surface Transportation Board (formerly the Interstate Commerce Commission) over interstate commerce carried out by motor carriers. *See* 49 U.S.C. § 13101, *et seq.*

In *Klitzke*, the Ninth Circuit adopted the statutory reading articulated by the Third Circuit in *Friedrich v. U.S. Computer Servs.*, 974 F.2d 409 (3d Cir.1992), which involved computer repairmen who used vans to deliver supplies to carry out repairs at their clients' place of business:

> [P]laintiffs (computer repairmen) argue that the [Secretary of Transportation] does not have the power to regulate them because they were engaged in a business other than transportation ... [citing to section 10524, now 13505]. Section 10524 [now 13505] has no application [for the "motor carrier" exception to the FLSA]. That section *merely exempts private motor carriers from licensing, permit and certificate requirements ... it does not deprive the [Secretary of Transportation] of its power to regulate the qualifications and maximum hours of service of employees of private motor carriers. Friedrich*, 974 F.2d at 413. (emphasis added).

██ Though this question has not yet been passed on by the Second Circuit, it appears to me that the Third and Ninth Circuits were correct. Plaintiffs would have me rule that § 13505—which applies solely to "this part" (i.e., the general licensing and certification of transportation companies operating in interstate commerce)—limits the Secretary's authority under the wholly different statutory provision of § 31502 (i.e., authority to regulate driver hours and safety). But adopting Plaintiffs' suggestion would render the motor carrier exception meaningless, as the Third Circuit recognized. *See Friedrich*, 974 F.2d at 413. This was clearly not Congress' intent.

There is a second reason why *New Mt. Pleasant* is not applicable here. The facts in this case (which are, fortunately, uncontested), are markedly different from those in *New Mt. Pleasant*: CPC produced its English muffins in New Jersey and then transported them across the state line to a depot in New York. In New York, the Plaintiffs picked up the products, loaded them into their trucks, and delivered them to the stores on their routes. The distributors were compensated for their driving and delivering of the products based on a percentage of the sales within their delivery routes. The products here were produced in one state and sold in another.

In *New Mt. Pleasant*, by contrast, the court found the "motor private carrier" definition not to apply *because New Mount Pleasant, a small bakery located in Rochester, New York, was not transporting goods in interstate commerce.* The baked goods were produced entirely within New York state and the deliveries were all made within New York state. The court rejected defendant's argument that, because some of the ingredients of the baked products had been delivered to the bakery from out of state, they were part of the "practical continuity of movement across state lines." *New Mt. Pleasant*, 1993 WL 372270, *4. Because the goods being delivered (i.e., New Mt. Pleasant's baked goods), were not in interstate commerce, the court determined that the Secretary of Transportation had no power to regulate the drivers, and the bakery was not exempt from the FLSA overtime requirements.

██ The fact that the Plaintiffs here picked up their goods at depots in New York and drove routes that lay entirely within New York State does not prevent a finding that the CPC products were in interstate commerce. In *Klitzke*, where the driver's route was entirely within the State of Oregon, but the products he was delivering (laundry and uniforms) came from out of state, the court held:

> Jurisdiction [pursuant to 49 U.S.C. § 13501] necessarily extends to transportation within a state that "is a practical continuity of movement" from the manufacturers or suppliers without the state, through a warehouse and on to customers whose prior orders or contacts are being filled. *Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1469 (9th Cir.1997)

Thus, "whether transportation is interstate or intrastate is determined by the essential character of the commerce, manifested by [the] shipper's fixed and persisting transportation intent at the time of shipment, and is ascertained from all of the facts and circumstances surrounding the transportation." *Klitzke,* 110 F.3d at 1469 (quotation omitted and citation omitted). Here, CPC baked the English muffins in New Jersey, and New York customers served by the Plaintiffs (and the Plaintiffs themselves) called their orders in to New Jersey. If this does not qualify as interstate commerce, I am hard pressed to understand what is.

CPC had a "fixed and persisting transportation intent"—i.e., an intention to move its muffins across state lines—when it took orders at the Order Desk in Totowa, New Jersey. Such an intent has been found to meet the requirement that the goods move in interstate commerce. *See Foxworthy v. Hiland Dairy Co.,* 997 F.2d 670, 672 (10th Cir.1993) (interstate commerce established where company had a "fixed and persisting transportation intent beyond the terminal storage point at the time of shipment, knowing exactly to which customers its product is going to and knowing ... who is going to buy what"). That Plaintiffs picked the New Jersey muffins up from depots located in New York State is irrelevant. As the Supreme Court has held, the "ritual" of placing goods in a warehouse before subsequent delivery to customers within the same state should not defeat the establishment of "interstate commerce" for purposes of the motor carrier exemption. *See Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 568, 63 S.Ct. 332, 87 L.Ed. 460 (1943).

Thus, as distributor/drivers, Plaintiffs' activities were within the Secretary of Transportation's power to regulate, because their activities affected the safety of operation of motor vehicles transporting property. This is the case even where the Secretary of Transportation has chosen not to exercise his authority to regulate the distributors. *See, e.g., Klitzke,* 110 F.3d at 1468 ("For the statutory exemption under Section 213(b)(1) to apply, the Secretary of Transportation need not actually regulate the driver or his employer; it applies whenever the Secretary of Transportation has the authority to regulate a driver's hours and safety"). Even where the driver performs duties other than, or in addition to, driving, his activities can be deemed to affect the safety of operation of a vehicle transporting property and thus under the power to regulate. *See Friedrich* 974 F.2d at 418 (citations omitted). And the drivers are subject to regulation even where the trucks are not owned by the employer. *See Friedrich,* 974 F.2d at 418 (citing DOL Wage & Hour Field Operations Handbook at 24a05(d) (May 13, 1982)).

I therefore hold that CPC was transporting goods in interstate commerce and that it qualifies as a private motor carrier under the Motor Carrier Act. This being so, even if Plaintiffs are deemed to be employees of CPC, CPC is exempt from the overtime provisions of the FLSA. Defendant is entitled to summary judgment as a matter of law, and all claims against Defendant are dismissed.

This constitutes the decision and order of this Court.