John SCHWIND, Plaintiff,

v.

EW & ASSOCIATES, INC. and
Elaine Wirth, Defendants.

No. 03 CIV. 9904(WCC).

United States District Court,
S.D. New York.

Feb. 18, 2005.

Dan Getman, Esq., New Palz, NY (Dan Getman, Esq., Of Counsel), for Plaintiff.

The Law Offices of N. Edward N. Hernandez, Esq. (Vincent C. Ansaldi, Esq., Of Counsel), Astoria, NY, for Defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff John Schwind brings the instant action against defendants EW & Associates, Inc. ("EWA") and Elaine Wirth (collectively, the "defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, New York State Labor Law, New York common law, the Employee Retirement Income Security Act ("ERISA") and the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). Plaintiff alleges that during the course of his employment, as an independent contractor from April 1998 through January 1, 2001 and June 2002 through October 2002, and as an employee from January 1, 2001 through June 24, 2002, he was improperly denied overtime pay pursuant to 29 U.S.C. § 213 and New York State Labor Law Articles 6 and 19 and its implementing regulations 12 N.Y.C.R.R. § 142.2 *et seq.* Plaintiff also alleges a common law claim for breach of contract and an ERISA–COBRA claim for EWA's alleged failure to provide notice of plaintiff's right to receive a continuation of his employee health plan pursuant to 29 U.S.C. § 1166(a)(4). In the present motion, defendants move for summary judgment pursuant to FED. R. CIV. P. 56 on the basis that plaintiff's overtime is exempt under several statutory provisions and, with respect to the ERISA–COBRA claims, defendants contend that EWA was exempt from the duty to provide notice of continued health insurance coverage. For the reasons stated hereinafter, defendants' motion is granted in part and denied in part.

## BACKGROUND

The following facts are undisputed unless otherwise indicated. Defendants operate a software training, computer con-

sulting and employee placement business. (Complt.¶ 11.) EWA was originally formed in 1992 as a sole proprietorship under the name E & W Limited by defendant Elaine Wirth. (Defs. Rule 56.1 Stmt. ¶ 4.) It is uncontested that plaintiff initially worked as an independent contractor for E & W Limited in or about April 1998; however, plaintiff contends that even though he was treated as an independent contractor, working on a commission basis during this time, he was an employee within the meaning of the FLSA and relevant state law. (Pl. Rule 56.1 Stmt., Defs. Stmts. Denied ¶ 5.)

E & W Limited was incorporated to form EWA in 1998 because plaintiff was able to acquire IBM as an account for defendants, and IBM would agree to work only with a corporation. (Defs. Rule 56.1 Stmt. ¶ 6.) EWA and plaintiff agreed to split the profits from the IBM account 50/50 after deducting administrative costs. (*Id.* ¶ 7.) Plaintiff's duties with respect to the IBM account were to manage the account and interview and hire trainers to provide consulting services to IBM. (*Id.* ¶ 8.) The IBM account lasted from March 1998 until April 1999. (*Id.* ¶ 10.) At the time plaintiff was initially hired, EWA was a small company with approximately one part-time worker and one or two other employees. (*Id.* ¶ 19.)

Beginning on or about January 1, 2001, plaintiff became an "official employee" of EWA as the Vice President of Sales and was paid a base salary of $70,000, plus, in 2001, $70,000 of additional compensation for total compensation of $140,000 in that year. (*Id.* ¶¶ 13, 16–17; Pl. Rule 56.1 Stmt. ¶ 6.) EWA never docked plaintiff's pay. (*Id.* ¶ 18.) Plaintiff continued in this position under these terms until June 24, 2002 at which time he again began to be treated as an independent contractor until about October 2002. (Pl. Rule 56.1 Stmt. ¶¶ 6–7.) Furthermore, according to defen-

dants, when plaintiff became an EWA employee on January 1, 2001, plaintiff elected not to join the EWA health plan, but rather chose to remain enrolled with his own insurance company. (Defs. Rule 56.1 Stmt. ¶ 14.) Plaintiff denies this allegation, asserting that his health insurance premiums were paid by EWA. (Pl. Rule 56.1 Stmt., Defs. Stmt. Denied ¶ 14.)

In addition, defendants maintain that plaintiff purchased 48 shares of EWA stock by way of a promissory note held in collateral from the end of December 2001 until his last day of employment with EWA; however, plaintiff alleges that Wirth agreed to sell plaintiff 48% of the stock of EWA, but the sale was never completed and no stock was ever transferred to plaintiff. (Defs. Rule 56.1 Stmt. ¶ 15; Pl. Rule 56.1 Stmt., Defs. Stmt. Denied ¶ 15.)

Plaintiff and defendants agree that as an independent contractor plaintiff performed the same duties that he performed as Vice President of Sales. (Pl. Rule 56.1 Stmt. ¶ 8; Defs. Rule 56.1 Stmt. ¶ 11.) However, the parties largely dispute the extent of plaintiff's responsibilities while employed by defendants. According to plaintiff, while he was treated as an independent contractor, he worked as a salesman "for EWA and only EWA." (Pl. Rule 56.1 Stmt. ¶ 9.) Plaintiff contends that his pay was "determined solely through EWA's efforts at selling and delivering its services" and that "[o]nce EWA was paid by the customer, only then did plaintiff receive any pay for his work." (*Id.*) In addition, plaintiff alleges that defendant Wirth was involved in all aspects of plaintiff's job. For instance, Wirth "oversaw plaintiff's work by directing which customers, prospects and potential trainers should be contacted ... directed which proposals should be generated and what the [sic] terms should be included in sales proposals and contracts ... had final decision-making authority

over proposals, hiring, engagement of contractors ... [and] signed all contracts." (*Id.*) Further, plaintiff was not permitted to "subcontract the work he did to anyone else... [and] was required to devote full-time efforts to performing the contractor work. Plaintiff's work was exclusive to EWA." (*Id.*) When plaintiff became a salaried employee and received the title of Vice President of Sales, his duties did not change. Plaintiff alleges that defendants failed to keep records of the specific hours of work or the duties performed, but contends that his duties consisted primarily of sales in that he "spent 2/3 of his time engaged in sales or activities incidental to sales, such as preparing contracts and proposals." (*Id.* ¶¶ 10–14.)

Defendants, on the other hand, contend that plaintiff "sold training projects and provided the trainers to the customer to do the training" and in order to do so, plaintiff "chose potential trainers who would be sent to fulfill the services sold ... [and] conducted and participated in interviews of potential trainers." (Defs. Rule 56.1 Stmt. ¶¶ 22, 27–28.) According to defendants, plaintiff was "in charge of directing the trainers and EW & Associates employees where to go and what to do in order to complete the client's training ... [and] his duties also included meeting and communicating with the client to help schedule trainers." (*Id.* ¶¶ 29, 33.) In addition, defendants allege that plaintiff had "input on the hiring of prospective ... employees ... [and] had the authority to propose business deals to clients ... [and] to lower a price offered for supplying training consultants based on his own judgment and without input from Elaine Wirth." (*Id.* ¶¶ 31–32, 37.) Additionally, defendants allege that Wirth was never given a detailed description of how plaintiff accomplished his work and that plaintiff made his own hours and calls, without conferring with Wirth about his schedule. (*Id.* ¶ 34.) Plaintiff was not required to keep time sheets. (*Id.* ¶ 41.) Defendants further contend that plaintiff supervised numerous EWA employees and part-time workers.[1] (Defs. Rule 56.1 Stmt. ¶ 43.) Lastly, defendants maintain that EWA never had twenty or more employees during any time period relevant to this action. (*Id.* ¶ 47.)

Plaintiff filed the present action under the FLSA based on defendants' alleged failure to pay overtime wages in violation of the FLSA and its implementing regulations and alleges that as a result of defendants' failure to comply with the FLSA overtime provisions, plaintiff suffered "loss of wages and interest thereon." (Complt. ¶¶ 34–36.) Plaintiff further asserts that defendants' failure to pay proper overtime wages for each hour worked over forty per week was willful within the meaning of the FLSA. (*Id.*) Additionally, plaintiff contends that defendants' failure to pay overtime wages was also in violation of New York Labor Law Articles 6 and 19 and its implementing regulations, that such failure to pay overtime wages for each hour worked over forty per week was willful within the meaning of N.Y. LABOR LAW § 663, and that defendants' failure to comply with the New York Labor Law overtime provisions, caused plaintiff to "suffer loss of wages and interest thereon." (*Id.* ¶¶ 37–39.) Plaintiff also alleges that defendants' failure to pay plaintiff all pay and commission due constitutes a breach of his employment contract under New York common law and that such breach caused plaintiff "loss of income, employment and damages." (*Id.* ¶¶ 40–41.) Lastly, plaintiff al-

---

1. It should be noted that plaintiff directly denies this point and contends that Wirth was the primary supervisor for each individual identified by defendants as an employee supervised by plaintiff. However, plaintiff does admit to some supervisory responsibility with respect to Garrett Hogan. (Pl. Rule 56.1 Stmt., Defs. Stmts. Denied ¶ 43.)

leges that defendants' failure "to provide notification of the plaintiff's right to continuation coverage under his employee health plan in violation of 29 U.S.C. § 1166(a)(4)" caused plaintiff "to suffer additional expenses associated with obtaining insurance" and defendants are liable under 29 U.S.C. § 1132(c)(1). (*Id.* ¶¶ 42–43.)

Consequently, following completion of discovery limited to the issue of defendants' liability under the FLSA, defendants moved for summary judgment dismissing the FLSA and state law claims on the ground that plaintiff is an exempt employee within the meaning of Section 13(a)(1) of the FLSA, 29 U.S.C. § 213(a)(1).[2] Plaintiff opposes the motion on procedural grounds, contending that defendants waived the affirmative defenses they are now asserting and, on the merits, arguing that issues of fact preclude a finding that plaintiff was an exempt employee. Defendants also move for summary judgment dismissing the New York Labor Law claims and the ERISA–COBRA claims.

It should also be noted that plaintiff moved for leave to file a Sur–Reply Memorandum in Opposition to Summary Judgment "in order to rebut an argument and affirmative defense that [was] never raised in the defendant's [sic] initial brief and motion papers—the 29 U.S.C. § 207(i) commissioned sales exemption." (Pl. Sur–Reply Opp. Summ. J. At 1.) Having reviewed all submissions, we grant plaintiff leave to file the Sur–Reply Memorandum and have considered the arguments asserted therein.

## DISCUSSION

### I. *Summary Judgment Standard*

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no

genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255, 106 S.Ct. 2505. However, to defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994).

### II. *FLSA Overtime Claim*

#### A. *General FLSA Standards*

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers" and to ensure that employees are fairly compensated. 29 U.S.C. § 202(a); *see also Reich v. New York City Transit Auth.*, 45 F.3d 646 (2d Cir.1995). The statute requires that employers pay overtime at a rate of not less

---

**2.** The parties agree that the regulations in effect during plaintiff's employment are to be applied to this case, even though the regula-

tions have been amended subsequent to the termination of plaintiff's employment with EWA.

than one and one-half times the employee's regular rate for hours worked in excess of forty per week. *See* 29 U.S.C. § 207(a).

The FLSA, however, specifically provides for exemptions that exclude certain employees from the FLSA's overtime provisions. In particular, Section 13(a) of the FLSA, 29 U.S.C. § 213(a)(1), exempts employers from paying overtime to employees who qualify as "bona fide executive, administrative or professional employees." These exemptions are defined by the Department of Labor ("DOL") regulations and "[e]mployees whose jobs fall within one of the enumerated categories are not entitled to certain protections of the Act [FLSA].... Employer's need not pay exempt employees overtime no matter how many hours they work each week." *Wright v. Aargo Sec. Services, Inc.*, No. 99 Civ. 9115, 2001 WL 91705, at *2 (S.D.N.Y. Feb. 2, 2001).

The employer has the burden of proof to establish that the subject employee falls under any of the enumerated exemptions. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); *Wright*, 2001 WL 91705, at *2. Because the FLSA is a remedial statute, "its exemptions are construed narrowly against the employer." *Wright*, 2001 WL 91705, at *2 (citing *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991); *Dambreville v. City of Boston*, 945 F.Supp. 384, 391 (D.Mass.1996)). In addition, a claim of exemption under the FLSA is an affirmative defense that, pursuant to FED. R. CIV. P. 8(c), must be specifically pleaded or will be deemed waived. *Id.* at *2 (citing *Magana v. Comm. of the N. Mariana Islands*, 107 F.3d 1436, 1445–46 (9th Cir.1997)). Plaintiff contends that defendants waived the affirmative defense of a claim of exemption under the FLSA, a point which the Court will address first as a preliminary matter.

**B. *Waiver***

■ In their Answer, defendants pleaded as a defense that "[t]he Court lacks jurisdiction as the plaintiff is not included in the class of individuals covered by the Fair Labor Standards Act." (Ans.¶ 44.) However, defendants failed to identify the specific FLSA exemptions that they now seek to invoke on this motion. Consequently, plaintiff argues that defendants should not be able to assert these exemptions as an affirmative defense.

■ FED. R. CIV. P. 8(c) provides: "In pleading to a preceding pleading, a party shall set forth affirmatively ... waiver, and any other matter constituting an avoidance or affirmative defense." The purpose of requiring affirmative defenses to be pleaded in the answer is "to notify a party of the existence of certain issues." *Doubleday & Co., Inc. v. Curtis*, 763 F.2d 495, 503 (2d Cir.1985); *see also United States v. Cont'l Illinois Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir.1989) (noting that "one of the main reasons for the rule stated in Fed.R.Civ.P. 8(c) is to avoid surprise to the plaintiff"). The Second Circuit has stated that Rule 8(c)'s "mandatory language has impelled us to conclude that a party's failure to plead an affirmative defense bars its invocation at later stages of the litigation." *Doubleday*, 763 F.2d at 503. (citing *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984) ("Failure to plead an affirmative defense in the answer results in 'the waiver of that defense and its exclusion from the case.'") (quotations omitted)).

■ While we agree with plaintiff that the exemptions under the FLSA are an affirmative defense and therefore must be pleaded in the answer, FED. R. CIV. P. 15(a) permits parties to amend pleadings. FED. R. CIV. P. 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the ad-

verse party; and leave shall be freely given when justice so requires." According to the Supreme Court,

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should ... be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

In addition, the Second Circuit has held that "a district court may consider the merits of an affirmative defense—even one explicitly listed as such in Fed.R.Civ.P. 8(c)—raised for the first time at the summary judgment stage, so long as the plaintiff has had an opportunity to respond." *Astor Holdings, Inc. v. Roski,* 325 F.Supp.2d 251 (S.D.N.Y.2003) (citing *Curry v. City of Syracuse,*.316 F.3d 324, 330–31 (2d Cir.2003) (allowing collateral estoppel to be raised as an affirmative defense even though raised for the first time in reply memorandum in support of a motion for summary judgment where plaintiff was provided notice, had an opportunity to respond and was not prejudiced by failure to plead the affirmative defense in answer)). Numerous courts have held that "absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time." *Steinberg v. Columbia Pictures Indus.,* 663 F.Supp. 706, 715 (S.D.N.Y.1987) (citations and internal quotations omitted); *see also Block v. First Blood Assoc.,* 988 F.2d 344, 349–351 (2d Cir.1993) (affirming district court's consideration of affirmative defense of statute of limitations first raised in summary judgment motion where plaintiff did not show bad faith or prejudice); *Economou v. Caldera,* 2000 WL 1844773, at *15 (S.D.N.Y. Dec. 18, 2000) (allowing affirmative defense of failure to exhaust administrative remedies to be considered even though defense was not pleaded in answer where there was no evidence of bad faith on part of defense counsel and no prejudice to plaintiff because plaintiff had knowledge of facts upon which defense was based and notice of possibility defense would be asserted); *Van Pier v. Long Island Sav. Bank,* 20 F.Supp.2d 535, 540 n. 6 (S.D.N.Y.1998) (noting that a defendant may raise an affirmative defense in a motion for summary judgment for the first time where plaintiff does not assert any prejudice from lateness of pleading) (collecting cases); *accord Magana,* 107 F.3d at 1445–46 (recognizing that defendants may raise an affirmative defense, such as a claim of exemption under the FLSA, for the first time in a motion for summary judgment so long as the delay does not prejudice the plaintiff).

Furthermore, "[w]here an affirmative defense is asserted for the first time in support of a defendant's motion for summary judgment, a court may construe the summary judgment motion as a motion to amend the answer, and granting summary judgment permits such an amendment *de facto.*" *Levy v. Kosher Overseers Assn. of Am., Inc.,* No. 92 Civ. 8377, 2000 WL 294842, at *7 (S.D.N.Y. Mar. 21, 2000) (internal citations omitted) (acknowledging above-mentioned rule but declining to apply it because of undue delay and prejudice to plaintiffs under facts of this case, in particular, seven-year delay in asserting affirmative defense); *see also Roloff v. Arabian Am. Oil Co.,* 421 F.2d 240, 242 (2d Cir.1970) ("By granting summary judgment [the court] in effect allowed an amendment to the [defendant's] pleading since that new defense was the basis of the motion for summary judgment."); *Blossom Farm Prods. Co. v. Amtraco Commodity Corp.,* 64 F.R.D. 424, 427 (S.D.N.Y.1974)

(deeming answer amended even where defendant never formally filed or served an amended answer, "predicated on [court's] belief that a motion for summary judgment may be granted on a defense not pleaded in the answer").

In the case at bar, defendants, in their Reply Memorandum of Law in Support of their Motion for Summary Judgment, request that the Court consider this motion on the merits, or in the alternative, request permission to amend their Answer to raise the administrative, executive and outside sales exemptions. (Defs. Reply Mem. Supp. Summ. J. at 3.) At the initial court conference on April 9, 2004, defendants requested permission to make a motion to dismiss plaintiff's claims for overtime on the basis that he was an exempt employee under the FLSA. However, the parties are in dispute as to which exemptions were discussed. According to defendants, both the administrative and executive exemptions, and possibly the exemption for computer workers, were specifically referenced during the conference. (*Id.* at 2.)

Notwithstanding the foregoing, we find persuasive the discussion among counsel on the record immediately before plaintiff's deposition in concluding that defendants did not waive the affirmative defenses asserted in their motion for summary judgment. The statements made by plaintiff's counsel demonstrate that there was no surprise that defendants would be asserting the FLSA exemptions as an affirmative defense as he specifically asked what exemptions are being claimed in this case, to which defendants' counsel responded, "[W]e are going to seek out several. There's going to be either the administrative exemption, the executive exemption, the sales exemption." (Schwind Dep. at 5, 6.) In addition, defendants' counsel specifically mentioned that by sales exemp-

tion he was referring to the outside sales exemption. (*Id.*)

Consequently, plaintiff cannot now claim surprise with respect to the administrative, executive and outside sales exemptions. Further, there will be no prejudice to plaintiff if these affirmative defenses are permitted because discovery was directed to the possible applicability of these FLSA exemptions. Plaintiff has not alleged any concrete example of prejudice resulting from defendants' assertion of the administrative, executive and outside sales exemptions. Thus, we will consider and decide the administrative, executive and outside salesman exemptions on the merits without formal amendment of the Answer because there was no surprise or prejudice and plaintiff availed himself of the opportunity to conduct discovery relative to those issues and to respond accordingly.

However, the Court will not consider the commissioned salesman exemption as an affirmative defense for defendants at this time because the defense had not been raised or mentioned prior to defendants' Reply brief in connection with the present motion. Plaintiff would be unfairly prejudiced if we were to consider defendants' assertion of the commissioned salesman exemption because of the lack of notice depriving plaintiff of the opportunity to respond. We note that although plaintiff did submit a Sur–Reply brief which the Court did agree to consider, it focused solely on the fact that the assertion of the commissioned salesman exemption was a surprise to plaintiff and that no real discovery had been conducted with respect to that exemption. However, we recognize the possibility that the commissioned salesman exemption may be dispositive in the present case with respect to plaintiff's FLSA claims. Accordingly, we grant plaintiff leave to file within twenty-one days from the entry of this Opinion and

Order, a Supplemental Memorandum of Law opposing defendants' assertion of the commissioned salesman exemption, with affidavits as to the relevant facts if desired. Defendants shall have fifteen days to file a Reply Memorandum with supporting affidavits if desired.

Accordingly, defendant's motion to amend is granted and defendant's Answer is deemed amended to assert as affirmative defenses the administrative, executive and outside salesman exemptions as listed under the FLSA. In addition, we will consider the commissioned salesman exemption as a potential affirmative defense upon receipt of the parties' papers. However, we will now consider whether the above-mentioned exemptions apply to the case at bar and determine to which periods they are applicable.

### C. *Periods to Which Exemptions Are Applicable—Independent Contractor v. Employee*

■ As a preliminary matter, we must determine whether plaintiff was protected by the provisions of the FLSA during the two separate periods in which he was treated as an independent contractor: April 1998 through January 1, 2001 and June 2002 through October 2002. The overtime provisions of the FLSA and New York Labor Law apply only to individuals who are "employees." Plaintiff maintains that although he was labeled as an independent contractor of EWA during these time periods, he was an "employee" under the FLSA and therefore entitled to the protections of the overtime provisions of the FLSA.

■ The Supreme Court has specifically declined to apply the well-established agency law concepts of "employee" and "independent contractor" when interpreting congressional labor statutes. *See generally N.L.R.B. v. Hearst*, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); *see also*

*McGuiggan v. CPC Intern.*, 84 F.Supp.2d 470, 479 (S.D.N.Y.2000) (noting that courts "must look beyond the common law and any fact analysis under other federal employment statutes" when interpreting the FLSA). The Supreme Court has held that a determination of the relationship between a worker and employer does not depend on isolated factors, but rather "upon the circumstances of the whole activity" when analyzing a FLSA claim. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947). Consequently, the Second Circuit has applied an "economic reality test" when making the determination of whether an individual is an employee or an independent contractor under the FLSA. *McGuiggan*, 84 F.Supp.2d at 479. In applying the economic reality test, a court must consider: (1) the degree of the employer's control over the worker; (2) the worker's opportunity for profit or loss and his investment in the business; (3) the degree of skill and independent initiative required to perform the work; (4) the permanence or duration of the working relationship; and (5) the extent to which the work is an integral part of the employer's business. *See Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir.1988) (citing *United States v. Silk*, 331 U.S. 704, 716, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947)). The test is intended to be broad "so that the [provisions will] have the widest possible impact in the national economy." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir.1984).

■ No one factor of the economic reality test is dispositive; rather, "the test is based on the totality of the circumstances." *Brock*, 840 F.2d at 1059. "The test is intended to ensure labor law protection is extended to all workers who are economically dependent on their employers by affording them protection as

'employees,' regardless of how their employers choose to define their status." *McGuiggan,* 84 F.Supp.2d at 479 (citations omitted). Furthermore, "[t]he ultimate concern is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in the business for themselves." *Brock,* 840 F.2d at 1059; *see also McGuiggan,* 84 F.Supp.2d at 479 ("In short, if the Plaintiff[ ] [was] in business for [himself], [he] was not [an] employee[ ]."). Finally, "[t]he existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts— whether workers are employees or independent contractors—is a question of law." *Brock,* 840 F.2d at 1059. After analysis of the five economic realty factors as discussed below, we conclude that plaintiff was an employee within the meaning of the FLSA during the period in which he was labeled an independent contractor by EWA.

### 1. *Defendants' degree of control*

A defendant need not supervise or monitor an employee on a daily basis to be found to exercise "control" over that employee as contemplated by the FLSA. *Id.* at 1060 (concluding that nursing service which dictated nurses' hourly wage, limited working hours and supervised nurses by monitoring patient care notes exercised necessary control for nurses to be employees within meaning of FLSA). Although plaintiff exercised discretion and independent judgment in completing his job, he did consult with Wirth about his daily schedule and work with her in completing his job. According to plaintiff he would begin his typical workday with a phone conversation with Wirth discussing "getting out proposals or documents ... getting feedback on marketing materials generated or laptop status." (Schwind Dep. at 29, 59.) Plaintiff maintains that he and

Wirth "would communicate with each other at least a dozen times a day via phone, email, back and forth ...." (*Id.* at 60.) Furthermore, plaintiff worked as a salesman "for EWA and only EWA." (Pl. Mem. Opp. Summ. J. at 12.) Consequently, there are facts in the record that support the inference that defendants exercised the necessary "control" over plaintiff to permit the finding that plaintiff was an employee within the context of the FLSA.

### 2. *Opportunity for profit or loss*

Although plaintiff had an opportunity for profit because he worked on commission, he did not invest significantly in EWA with his own money. *See Thomas v. City of Hudson,* No. 95 Civ. 0070, 1996 WL 280828, at *8 (N.D.N.Y. May 20, 1996) (holding that lack of sufficient evidence that plaintiffs invested more of their own money in employer's programs weighs in favor of finding of employee status); *see also Brock,* 840 F.2d at 1060 (concluding that because the nurses "have no independent investment in the business" the opportunity for profit or loss prong weighs in favor of finding employee status). Furthermore, as mentioned earlier, plaintiff was not in business for himself and because he worked only for EWA, he was precluded from other income. *See Gustafson v. Bell Atl. Corp.,* 171 F.Supp.2d 311, 325 (S.D.N.Y.2001) (Conner, J.). Accordingly, we conclude that this part of the test weighs in favor of a finding of employee status.

### 3. *Degree of skill and independent initiative*

A plaintiff's high degree of skill weighs in favor of a defendant; however, "the fact that workers are skilled is not itself indicative of independent contractor status." *Brock,* 840 F.2d at 1060. Plaintiff in this case exercised a high degree of skill and

independent initiative because he was in charge of sales, meeting and scheduling trainers and proposing and negotiating business proposals. He did so without approval from defendants on every detail. Further, plaintiff was responsible for many of defendants' major clients including initial contact and the handling of their accounts. Based on the record, this third consideration weighs in favor of a finding of independent contractor status.

#### 4. *Permanence or duration of the relationship*

Plaintiff worked exclusively for defendants for approximately four years. During this time period he was first treated as an independent contractor, then as an employee, and again as an independent contractor. During all times, however, plaintiff maintained the same responsibilities and duties. The nature and duration of the working relationship of the parties weighs in favor of a finding employee status.

#### 5. *Integral part of defendants' business*

It is clear that plaintiff was an integral part of defendants' business, a point which does not appear to be disputed by defendants and is supported throughout the record. Thus, the fifth consideration weighs in favor of a finding of employee status.

#### 6. *Totality of the Circumstances*

In the case at bar, the totality of the circumstances demonstrate that as a matter of economic reality, plaintiff was an employee of defendants within the FLSA framework at all times during plaintiff's and defendants' working relationship, irrespective of the label "independent contrac-

tor" during certain periods. Plaintiff's duties were exactly the same when he was classified as an independent contractor as they were when he was an employee with the title Vice President of Sales.

Weighing all the factors, we conclude, as a matter of law, that plaintiff was an employee of defendants for FLSA purposes. Although plaintiff was technically an "independent contractor" from April 1998 through January 1, 2001 and again from June 2002 until October 2002, the record does not show that he was ever truly "in business" for himself. *Id.* at 1059. Consequently, we hold that plaintiff is an "employee" under the broad definition of the FLSA, and therefore may be entitled to overtime pay under the FLSA and New York Labor Law for the period in which he was treated as an independent contractor.

Upon the determination that plaintiff was an employee for purposes of FLSA analysis during all periods of the working relationship between plaintiff and defendants, we must now determine which, if any, exemptions are applicable to render the overtime provisions inapplicable to plaintiff.

#### D. *Executive, Administrative or Professional Capacity Exemption*

Defendants allege that plaintiff was an "administrative employee" or "executive employee" within the meaning of 29 U.S.C. § 213(a)(1), which exempts employees working in a "bona fide executive, administrative or professional capacity" from the overtime provisions of the FLSA. The Secretary of Labor promulgated regulations to implement the FLSA[3] and, with respect to determining whether an employee falls

---

**3.** "The regulations, ..., promulgated by the Secretary of Labor pursuant to statute 'have the force of law, and are to be given controlling weight unless they are found to be arbi- trary, capricious, or manifestly contrary to the statute.'" *Wright*, 2001 WL 91705, at *4 n. 2 (quoting *Freeman v. Nat'l Broadcasting Co.*, 80 F.3d 78, 82 (2d Cir.1996)).

within the Section 213(a)(1) exemption, set forth two different tests which primarily depend on the salary of the employee. Whether a court should apply the "short test" or the "long test" depends on whether the employee makes more or less than $250 per week. The parties are in agreement that at all relevant times that plaintiff was classified as an employee, plaintiff made more than $250 per week, thus the short test applies to the present motion.[4] The short test consists of two independent criteria, the "salary basis" requirement and the "duties" test, both of which must be met in order for an employee to be exempt from the overtime provisions of the FLSA.

### 1. *Salary Basis Requirement*

The parties do not dispute that plaintiff was a salaried employee during the period in which he was classified as an employee of EWA. Therefore this criterion is satisfied for the period of January 1, 2001 through June 2002. However, during the periods in which plaintiff was treated as an independent contractor, April 1998 through January 1, 2001 and June 2002 through October 2002, the "bona fide executive, administrative or professional" exemption is unavailable to defendants because plaintiff was not paid on a salary basis and received only commissions.

### 2. *Duties Test*

Having satisfied the salary prerequisite for the period January 1, 2001 through June 2002, defendants must also prevail on

the second component of the short test, the "duties" test which focuses principally on the employee's primary duties as they relate to management or management policies. It should be noted that the regulations provide that "it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time." 29 C.F.R. § 541.103. In addition, " 'time alone ... is not the sole test' and an employee 'may nevertheless have management as his primary duty if the other pertinent factors support such a conclusion.' " *Kahn v. Superior Chicken & Ribs, Inc.*, 331 F.Supp.2d 115, 118 (E.D.N.Y.2004) (quoting 29 C.F.R. § 541.103).

Whether an employee is exempt from the overtime pay provisions is a "fact intensive inquiry." *Id.* (citing *Wright*, 2001 WL 91705, at *10). In view of that, the Department of Labor has promulgated regulations which provide five factors to consider in determining whether an employee's primary duty is management: "(1) the amount of time spent performing managerial duties; (2) the relative importance of the managerial duties as compared with other duties; (3) the frequency with which he exercises discretionary powers; (4) his relative freedom from supervision; and (5) the relationship between his salary and the wages paid to employees doing similar non-exempt work." *Id.* (citing 29 C.F.R. § 541.103). With the above understanding, we will now consider whether plaintiff is exempt under either the administrative exemption or the executive exemption.

---

4. We note that the periods in which plaintiff was classified as an independent contractor, April 1998 through January 1, 2001 and June 2002 through October 2002, plaintiff cannot be exempt from the FLSA under the "bona fide executive, administrative or professional capacity" exemption because he was not a salaried employee. Whether the overtime provisions of the FLSA are applicable to plaintiff during these time periods will turn on whether he was an employee as it is defined in the FLSA context, which we found he was, irrespective of the classification used by the parties during those periods. *See* discussion *supra*, Part II.C. Thus, the following analysis concerning whether plaintiff falls under the administrative exemption is applicable only to the period January 1, 2001 through June 24, 2002.

### a. *Administrative Exemption*

 A salaried employee achieves exempt status under the administrative exemption if his "primary duty consists of the performance of . . . office or nonmanual work directly related to management polices or general business operations of his employer or his employer's customers . . . which includes work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.2(e)(2). The implementing regulations further elaborate on the meaning of the phrase "directly related to management policies or general business operations."[5] Section 541.205 of title 29 of the Code of Federal Regulations provides:

> The phrase "directly related to management policies or general business operations of his employer or his employer's customers" describes those types of activities relating to the administrative operations of a business as distinguished from "production" or, in a retail or service establishment, "sales" work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.
>
> The administrative operations of the business include the work performed by so-called white-collar employees engaged in "servicing" a business as, for, example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control. An employee performing such work is engaged in activities relating to the administrative operations of the business . . . .
>
> As used to describe work of substantial importance to the management or operation of the business, the phrase "directly related to management policies or general business operations" is not limited to persons who participate in the formulation of management policies in the operation of the business as a whole. Employees whose work is "directly related" to management policies or to general business operations include those [whose] work affects policy or whose responsibility it is to execute or carry it out. The phrase also includes a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business.

29 C.F.R. § 541.205(a), (b) & (c). Defendants have the burden to demonstrate that each of these elements was present in plaintiff's employment, and we again note that the exemptions are to be construed narrowly. *See Reich v. State of New York*, 3 F.3d 581, 586–87 (2d Cir.1993), *overruled by implication on other grounds by Seminole Tribe v. Florida*, 517 U.S. 44, 59–66, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

In the present case, we conclude that plaintiff was engaged in an administrative capacity as Vice–President of Sales of EWA. Plaintiff was responsible for sales, but in actuality his duties were far more extensive than just sales. EWA is a personal computer based consulting and training firm that "provide[s] trainers to corporations to teach the corporations' employees how to use software or Microsoft products [and][p]laintiff sold training pro-

---

5. The "duties test" embodies the Secretary's regulations, therefore " 'his interpretation of it is . . . controlling unless plainly erroneous or inconsistent with the regulation.' " *Wright*, 2001 WL 91705, at *11 n. 7 (quoting *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)).

jects and provided the trainers to the customer to do the training." (Defs. Mem. Supp. Summ. J. at 6 (citing Schwind Dep. at 12–14).) Plaintiff's duties with respect to EWA were "directly related to management policies or general business operations" and of substantial importance to the management and operation of EWA and its customers. Plaintiff's job in sales and further management of client's accounts is the very heart of EWA's business and his duties were vital in implementing EWA's management policies and business objectives.

While plaintiff relies on the fact that sales work is nonexempt, he fails to consider his other duties with EWA and the fact that the work he did for defendants involved much more than just selling. Plaintiff's duties involved the very business of EWA, delivering training and consulting services. Further, plaintiff's duties were more than merely "production" work which is excluded from the administrative exemption. The distinction between administrative work and production work separates " 'those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services that the enterprise exists to produce and market.' " *Bennett v. Progressive Corp.*, 225 F.Supp.2d 190, 217 (N.D.N.Y.2002) (quoting *Ahern v. State of New York*, 807 F.Supp. 919, 925 (N.D.N.Y.1992) (quotations omitted)).

Plaintiff's work was more than merely production work and sales; it consisted of being on-site with clients: "[s]elling, understanding their needs, potentializing resources" and handling client relations and client services. (Schwind Dep. at 69.) Plaintiff acted as a liaison between EWA and most of its major clients. In addition, plaintiff proposed business deals to clients and negotiated many contracts. (*Id.* at 74.) Plaintiff also directed fellow employees in accomplishing the goals of the company. (*Id.* at 31–33.)

Plaintiff asserts that his primary duty was "sales," however the only evidence to support that claim is his self-serving testimony. When pressed by defendants' counsel regarding his duties, plaintiff admits to having much more responsibility than just sales. Plaintiff was very involved in business decisions of EWA and would often discuss business prospects and finances with Wirth. (*Id.* at 80.) He interviewed potential trainers, scheduled trainers to provide consulting and training to clients and worked closely with clients in meeting their needs. (*Id.* at 22–24, 29, 50–53.) In addition, plaintiff was not subject to supervision by defendants. He was not required to keep time sheets, planned his own schedule, worked mostly from home or on-site and made many decisions that were vital to the management and business of EWA, such as the hiring of trainers who would then be assigned to clients. Moreover, plaintiff admitted that he often represented himself to clients as a partner of EWA. (*Id.* at 95.) Plaintiff maintains he did so to put the clients at ease so that they felt like they were "dealing with someone higher up" who was capable of making decisions and agreements. (*Id.*) This further evidences that plaintiff had authority to make decisions vital to the business of EWA. Plaintiff represented the company, negotiated contracts, promoted sales and was involved in business research and control. Consequently, plaintiff's duties were such that he was "engaged in activities relating to the administrative operations of the business." *See, e.g., Zacholl v. Fear & Fear, Inc.*, No. 01 Civ.1953, 2004 WL 725964, *1–2 n. 2 (N.D.N.Y. April 5, 2004).

Furthermore, plaintiff's work required discretion and independent judgment.

In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. ... [T]he person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance.

29 C.F.R. § 541.207(a). In addition, "the discretion and independent judgment exercised must be real and substantial, that is, they must be exercised with respect to matters of consequence." 29 C.F.R. § 541.207(d)(1). Moreover, the regulations provide that an employee who "arranges interviews and meetings, . . . handles callers and meetings himself . . . . [and is] given reasonable latitude in carrying on negotiation on behalf of their employers" exercises discretion and independent judgment. 29 C.F.R. § 541.207(d)(2).

Based on the foregoing, it is clear that plaintiff exercised discretion and independent judgment while employed by EWA. Plaintiff delivered training and consulting services to EWA's clients by interviewing and hiring potential trainers and sending them to clients to provide the services sold. (Schwind Dep. at 22, 25.) Plaintiff was responsible for determining who would service a particular client without consulting with defendants for approval of those decisions. This responsibility, namely providing consulting and training services to clients, was a matter of consequence to the business of EWA. Additionally, plaintiff exercised discretion and independent judgment when he proposed business deals to clients and negotiated those deals. (*Id.* at 74.)

Accordingly, we hold that plaintiff is exempt from the overtime provisions of the FLSA under the administrative exemption during the time he was employed as Vice President of Sales of EWA and summary judgment is granted with respect to plaintiff's claims of violations of the FLSA for the time period January 1, 2001 through June 24, 2002.

Having determined that plaintiff is exempt under the administrative exemption, we need not address whether the executive exemption is applicable for the period in which plaintiff was a salaried employee of EWA. Furthermore, the executive exemption cannot apply to the periods in which plaintiff was treated as an independent contractor because he was not a salaried employee during those time periods. Thus, we will now consider whether the outside sales person exemption is applicable to those periods.

### E. *Outside Sales Person Exemption*

■ "Any employee employed . . . in the capacity of outside salesman (as such term[ ][is] defined and delimited from time to time by regulations of the Secretary [of Labor] . . .)" is exempted from the FLSA's requirements including the overtime provisions. 29 U.S.C. § 213(a)(1). The Secretary of Labor, exercising this delegated authority, has promulgated regulations to define the "outside salesman" exemption. 29 C.F.R. § 541.5 provides that the term outside salesman shall mean any employee:

(a) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:

(1) Making sales within the meaning of section 3(k) of the Act or

(2) Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(b) Whose hours of work of a nature other than that described in paragraph (a)(1) or (2) of this section do not exceed 20 percent of the hours worked in the

workweek by nonexempt employees of the employer: Provided, That *work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work.*

29 C.F.R. § 541.5 (emphasis added). The regulations explain that,

> [t]he 20 percent is computed on the basis of the hours worked by nonexempt employees of the employer who perform the kind of non-exempt work performed by the outside salesman. If there are no employees of the employer performing such non-exempt work, the base to be taken is 40 hours a week, and the amount of non-exempt work allowed will be 8 hours a week.

§ 29 C.F.R. 541.507.[6] The regulations further specify that "work performed 'incidental to and in conjunction with the employee's own outside sales or solicitation' includes not only incidental deliveries and collections ... but also any other work performed by the employee in furthering his own sales efforts." 29 C.F.R. § 541.503 ("Work performed incidental to and in conjunction with the employee's own outside sales or solicitations would include, among other things, the writing of his sales reports, the revision of his own catalog, the planning of his itinerary and attendance at sales conferences.").

Based on the record before us, we cannot conclude as a matter of law that plaintiff falls under the "outside salesman" exemption. Particularly, defendants cannot undisputedly show that plaintiff was engaged in non-exempt work for less than twenty percent of the hours he worked for EWA. Pursuant to 29 U.S.C. § 211(c), an employer has the duty to keep accurate records of employees' "wages, hours, and other conditions and practices of employment." *See also* 29 C.F.R. §§ 516.2, 516.3. The regulations explicitly state that an employer must record, *inter alia*, "[h]ours worked each workday and total hours worked each workweek." 29 C.F.R. § 516.2(a)(7). Defendants maintain that plaintiff's "non-sale work represented close to zero percent of his work." (Defs. Mem. Supp. Summ. J. at 19.) However, there is no support for this assertion, which plaintiff denies, because defendants did not maintain any records of plaintiff's daily and weekly hours of work or the nature of his work as required by the FLSA. An "employer cannot be heard to complain" when through their own failure to maintain proper records there exists a question of fact as to the hours worked and the nature of the work performed by an employee asserting violations of the FLSA. *See Anderson v. Mt. Clemens Pottery,* 328 U.S. 680, 688, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

Accordingly, summary judgment on the basis that plaintiff is an exempt "outside salesman" must be denied.

## III. *Remaining Claims*

Defendants, in the present motion, also request that this Court grant summary judgment in favor of defendants on plaintiff's remaining claims: (1) claims relating to violations of New York Labor Law; (2) claims of willful violation of the FLSA and New York Labor Law; (3) a breach of contract claim; and (3) a claim under ERISA–COBRA alleging that defendants failed to provide plaintiff with notification of his right to continuation coverage under his employee health plan, in violation of 29 U.S.C. § 1166(a)(4). However, plaintiff maintains that at the initial conference,

---

**6.** Because neither party has maintained that there are non-exempt employees who performed similar work to plaintiff, defendants must show that plaintiff was engaged in non-exempt work less than eight hours per week.

defendants requested that discovery be limited to plaintiff's employment status and the applicability of the FLSA exemptions. (Pl. Mem. Opp. Summ. J. at 21–22.) Over plaintiff's objections, the Court stayed all other discovery concerning the other matters and claims and limited discovery to determining plaintiff's employment status and whether the FLSA was applicable or if plaintiff was exempted under one of the enumerated exemptions. Defendants, nevertheless, ask the Court to rule on claims other than those related to whether plaintiff is exempt from the FLSA overtime provisions.

 In order for summary judgment to be properly granted, "[t]he nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989) (quoting *Anderson*, 477 U.S. at 250 n. 5, 106 S.Ct. 2505). "The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment." *Id.* Unless the court is able to "conclude that the parties had already had 'a fully adequate opportunity for discovery,'" summary judgment is premature and inappropriate. *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996) (quoting *Trebor Sportswear Co.*, 865 F.2d at 511).

Although defendants request that the Court consider granting summary judgment on all claims, we cannot do so because there has been no discovery as yet with respect to these other claims as we limited discovery to the narrow issue of whether the FLSA is applicable to plaintiff. *See id.* Accordingly, plaintiff must be afforded an opportunity to conduct discovery with respect to the non-FLSA claims. Consequently, summary judgment with respect to such claims cannot be granted at this time.

## CONCLUSION

For all of the foregoing reasons, the defendants' motion for summary judgment is granted in part and denied in part. Summary judgment is granted only with respect to plaintiff John Schwind's claim of violation of the overtime provisions of the Fair Labor Standards Act (the "FLSA") during the period of January 1, 2001 through June 24, 2002. Accordingly, that claim is dismissed. In addition, as previously stated, plaintiff shall have twenty-one days from the entry of this Opinion and Order to submit additional evidence accompanied by a Supplemental Memorandum of Law in response to defendants' assertion of the commissioned salesman exemption's applicability to the present case, and defendants shall have fifteen days thereafter to file a Reply Memorandum and supporting affidavits.

Summary judgment, however, is denied as to all other claims.

SO ORDERED.