Filed 11/9/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOSEPH SEMPRINI et al., | |
| Plaintiffs and Appellants, | G057740 |
| v. | (Super. Ct. No. 30-2015-00776114) |
| WEDBUSH SECURITIES, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Randall J. Sherman, Judge. Reversed and remanded.

Callahan, Thompson, Sherman & Caudill, Robert W. Thompson and Charles S. Russell for Plaintiffs and Appellants.

Jones, Bell, Abbott, Fleming & Fitzgerald, William M. Turner, Asha Dhillon, and Catherine L. Dellecker for Defendant and Respondent.

\* \* \*

Under California law, an employer generally must pay its employee overtime if he or she works above a set number of hours. A person employed in an administrative capacity, however, is exempt from this and other wage and hour requirements if he or she performs certain duties and is paid a monthly salary equivalent to at least twice the state minimum wage for full-time employment.

The question presented here is whether a compensation plan based *solely* on commissions, with recoverable advances on future commissions, qualifies as a "salary" for purposes of this exemption. We conclude it does not. Since the trial court found the employees in question are exempt and entered judgment for the employer, we reverse and remand this matter for further proceedings.

**FACTS**

Defendant Wedbush Securities, Inc. (Wedbush) is a securities broker-dealer firm that provides financial planning and investment products through its financial advisors. It classifies its California financial advisors as exempt under the administrative exemption. As discussed below, the administrative exemption only applies if an employee earns a monthly "salary" equivalent to at least twice the state minimum wage. The central issue in this case is whether the Wedbush compensation model meets that requirement.

Wedbush pays its financial advisors on a commission-only basis. It uses a computer program to track the trades they make in a given month and then calculates the compensation owed based on what commission tier the employee met that month. The higher the employee's total monthly gross product sales, the higher the percentage used to calculate the employee's monthly commission payment.

For example, under Wedbush's 2014 commission schedule, if an investment advisor's total monthly gross product sales were between $0 and $6,999, he or she would receive a 20 percent commission on "Stocks, Bonds, Options, [and]

2

Syndicate Tender Solicitation" and a 20 percent commission on "Insurance, Special Products, Unit Investment Trust, [and] Mutual Funds." If his or her total monthly gross product sales were between $7,000 and $9,999, those commission percentages would increase to 25 percent and 25 percent, respectively. And if his or her total monthly gross product sales were between $10,000 and $12,499, those commission percentages would increase to 32 percent and 35 percent, respectively.

If the amount of commissions a financial advisor earns in a given month is not at least double the California minimum wage, Wedbush pays the financial advisor the commission due *plus* a "draw"—or advance on future commissions—in an amount equal to the difference between the commission and double the minimum wage. According to Wedbush, this ensures financial advisors always receive a minimum monthly payment of at least double the minimum wage. Wedbush observes its financial advisers can earn compensation above the guaranteed minimum, and "most of them did."

But financial advisors are expected to repay the draw, and they carry it forward as a deficit, month to month and even year to year, until it is repaid. To recoup draw payments, Wedbush reduces the employee's future monthly commission payments, to the extent they exceed double the minimum wage, until the draw is repaid in full.

There is conflicting evidence in the record as to what happens if a financial advisor's employment is terminated before he or she has repaid all draws. According to a June 2000 compensation agreement, if the employee is terminated, Wedbush may "set-off any and all amounts owed by the [employee] to [Wedbush] by deducting said amounts from the compensation due the [employee] if any. If [the employee] remains indebted to [Wedbush] on his/her termination date, after application of such set-off, [the employee] hereby agrees to continue to be responsible for such indebtedness on demand or, at the option of [Wedbush], to sign a Note Payable to [Wedbush] under specific terms and concessions to be negotiated at that time."

3

According to a declaration submitted by Wedbush's director of human resources, however, "[i]f a financial advisor's employment with Wedbush was terminated before he or she repaid an Advance in full, Wedbush forfeits its right to recoup any outstanding portion of the Advance." This policy is not reflected in any of Wedbush's written policies.[1] It is unclear from the declaration when this policy was instituted, and there is no indication this policy was ever communicated to Wedbush employees. Wedbush's payroll records for the class are not part of the record, so we cannot determine whether this policy was ever implemented, and the trial court made no factual finding on this issue.

Plaintiff Joseph Semprini is a former employee of Wedbush, and plaintiff Bradley Swain is a current employee of Wedbush. Semprini and Swain (collectively, Appellants) filed a putative class action against Wedbush on behalf of all Wedbush employees in California who were paid once a month and who earned commissions in the preceding four-year period. Appellants' operative second amended class action complaint includes various wage and hour claims based on Wedbush's alleged misclassification of its financial advisors as exempt. Wedbush raised the administrative exemption as one of its affirmative defenses.

The trial court granted Appellants' motion to certify the class of approximately 105 class members. At Appellants' request, the court then bifurcated the trial to decide first whether Wedbush's compensation structure satisfied the administrative exemption's salary basis test. Following a bench trial, the court ruled that Wedbush's compensation plan satisfied the salary basis test and that the administrative

---

[1] On appeal, Wedbush asserts that "[i]f a financial advisor's employment with Wedbush terminated when the financial advisor carried a debit balance, the compensation plan provided that Wedbush would forfeit its right to recoup any outstanding Advances and the financial advisor would permanently retain that money." That is not reflected in the compensation plan in our record.

4

exemption provided a complete defense to all remaining causes of action. Accordingly, it entered judgment in Wedbush's favor. This appeal followed.

## DISCUSSION

The only issue before us is whether Wedbush's compensation plan satisfies the administrative exemption's salary basis test. This is a question of law subject to our independent review. (*Negri v. Koning & Associates* (2013) 216 Cal.App.4th 392, 396 (*Negri*).)

1. *Overview of the Administrative Exemption and the Salary Basis Test*

As noted above, California law requires employers to pay overtime rates to employees who work above a set number of hours, unless an exemption applies. (*Negri*, *supra,* 216 Cal.App.4th at p. 394.) The Labor Code authorizes the Industrial Welfare Commission (IWC) to establish exemptions for employees who perform certain duties and who "earn[ ] a monthly salary equivalent to no less than two times the state minimum wage for full-time employment." (Lab. Code,[2] § 515, subd. (a).) Consistent with that authorization, IWC wage order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040; Wage Order 4), which governs "persons employed in professional, technical, clerical, mechanical, and similar occupations," states an employee is exempt under the administrative exemption if that employee (1) is primarily engaged in exempt duties and (2) earns "a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment." (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(g).) The parties stipulated the duties test was satisfied, so the sole issue presented here is whether the salary basis test is likewise satisfied.

"'[T]he assertion of an exemption from the overtime laws is considered to be an affirmative defense, and therefore the employer bears the burden of proving the

---

[2] All further undesignated statutory references are to this code.

employee's exemption.'" (*Negri, supra,* 216 Cal.App.4th at p. 397.) "[W]e narrowly construe exemptions against the employer, 'and their application is limited to those employees plainly and unmistakably within their terms.'" (*Peabody v. Time Warner Cable, Inc*. (2014) 59 Cal.4th 662, 667.)

Neither section 515 nor Wage Order 4 defines what constitutes a "salary" or what it means to pay an employee on a salary basis for purposes of the exemption. As the *Negri* court observed, "Wage Order 4 refers to compensation in the form of a 'salary.' It does not define the term. The regulation does not use a more generic term, such as 'compensation' or 'pay.' Either of these terms would encompass hourly wages, a fixed annual salary, and anything in between. 'Salary' is a more specific form of compensation. A salary is generally understood to be a fixed rate of pay as distinguished from an hourly wage." (*Negri, supra,* 216 Cal.App.4th at p. 397 [compensation plan based on number of hours worked, with no guaranteed minimum, is not a "salary" under Wage Order 4's administrative exemption].) [3]

California courts follow the federal salary basis test to a substantial degree and look to the federal regulations implementing the Fair Labor Standards Act (29 U.S.C. § 201 et seq.) (the FLSA) for guidance in interpreting the salary basis test. (See *Negri, supra,* 216 Cal.App.4th at pp. 397-398; *Kettenring v. Los Angeles Unified School Dist*. (2008) 167 Cal.App.4th 507, 513 (*Kettenring*).) Those regulations explain that to be exempt from the federal overtime pay requirement, an administrative employee must be engaged in specified administrative job duties and be paid on a "salary or fee basis." (29 C.F.R. § 541.200(a)(1) (2019).)

---

[3] Defining salary as "a fixed rate of pay" makes sense to us since "salaried employees are paid for the general value of their services rather than the precise amount of time spent on the job." (Simmons, Wage and Hour Manual for Cal. Employers (23d ed. 2020) § 10.4, pp. 528-529.)

The regulations further state an employee is paid on a salary basis if the employee "regularly receives each pay period on a weekly, or less frequent basis, a *predetermined amount* constituting all or part of the employee's compensation, which amount is *not subject to reduction because of variations in the quality or quantity of the work performed*." (29 C.F.R. § 541.602(a) (2019), italics added.) The regulations then add this: "An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available." (*Id.*, § 541.602(a)(2).)

Effective January 1, 2020, this regulation was amended to add that "[u]p to ten percent of the salary amount required by § 541.600(a) may be satisfied by the payment of nondiscretionary bonuses, incentives and commissions, that are paid annually or more frequently." (29 C.F.R. § 541.602(a)(3) (2019); see also 84 Fed. Reg. 51230 (Sept. 27, 2019).) Wage and Hour Division U.S. Department of Labor Fact Sheet # 17U (2019) explains that "[e]mployers may satisfy up to 10 percent of the standard salary requirement ($68.40 per week) with nondiscretionary bonuses, incentive payments, and commissions," but "must pay the exempt executive, administrative, or professional employee on a salary basis at least 90 percent ($615.60 per week) of the standard salary level." It adds, "this does not mean bonuses[, incentive payments, or commissions] are capped. It only means that the amount an employer may credit against the weekly standard salary level is limited to 10 percent of the required salary amount."

2.    *Analysis*

Against that backdrop, we analyze whether Wedbush's compensation structure satisfies the salary basis test. No California court has addressed whether a compensation plan based *solely* on commissions, with a recoverable draw against future

7

commissions, qualifies as a "salary" for purposes of the administrative exemption. For the reasons discussed below, we conclude it does not.[4]

First and foremost, 29 C.F.R. section 541.602(a)(3) (2019) states that *only* "*[u]p to ten percent* of the salary amount required by § 541.600(a) may be satisfied by the payment of . . . commissions." (Italics added.) So a commission-only compensation plan—i.e., a compensation plan based *100 percent* on commissions—does *not* satisfy the federal salary basis test. (See also *Schwind v. EW & Associates, Inc.* (2005) 357 F.Supp.2d 691, 703 [observing without discussion that administrative "exemption is unavailable to defendants because plaintiff was not paid on a salary basis and received only commissions"].) Since "California follows the federal salary basis test to a substantial degree" (*Kettenring, supra,* 167 Cal.App.4th at p. 513), a commissions-only compensation plan cannot pass California's salary basis test.

---

[4] The issue presented here is not whether paying a base salary of at least twice the minimum wage, plus commissions, satisfies the salary basis test. If it were, we might well reach a different conclusion. (See 29 C.F.R. § 541.604(a) (2019) ["An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis."].)

That is not how Wedbush's compensation plan works. Instead, Wedbush pays its financial advisors on a commission-only basis; if a financial advisor fails to earn commissions equal to twice the minimum wage, Wedbush *advances* the difference; and Wedbush then *recoups* that advance in later pay periods.

On appeal, Wedbush argues "Appellants were paid a minimum salary of double minimum wage plus additional income in the amounts of the commissions they earned on securities transactions that exceeded double minimum wage." Not so. Wedbush's Employee Compensation and Performance Evaluations plan specifically addresses this critical issue: "Nothing in this policy shall be interpreted to mean that production and commissioned personnel are paid a salary; they are paid on a commission basis only, and draws are advances against earned or unearned commissions." During oral argument, counsel for Wedbush in effect suggested that we should ignore this language. We decline to do so.

Second, the federal regulations state that to meet the salary basis test, the employee must regularly receive "a *predetermined* amount constituting all or part of the employee's compensation, which amount is *not subject to reduction because of variations in the quality or quantity of the work performed*." (29 C.F.R. § 541.602(a) (2019) italics added.) Wedbush's compensation model does not fit within that definition because the financial advisors' commissions fluctuated each month based on their performance and the quantity of their sales. The higher the employee's total monthly gross product sales, the higher their commissions; and conversely, the lower their sales, the lower their commissions.[5] Such a compensation system does not meet the salary basis test.

*Negri, supra,* 216 Cal.App.4th 392, is instructive. The plaintiff in *Negri* was an insurance claims adjuster who was paid $29 per hour, with no minimum guarantee, and no overtime if he worked over 40 hours per week. (*Id.* at p. 395.) Citing 29 Code of Federal Regulations part 541.602(a) (2012), the *Negri* court found the adjuster's hourly wage of $29 per hour was not a "salary" under the administrative exemption, even though it exceeded double the minimum wage, because his pay "var[ied] according to the amount of time he put in." (*Id.* at pp. 398-399.) The court recognized that "in practice" the employer always paid him "the equivalent $29 per hour for 40 hours per week so that he, in effect, received an unvarying minimum amount of pay," but explained that "*if he worked fewer claims 'he made less money than if he worked more claims.' That is the same thing as saying that plaintiff was not paid 'a predetermined amount' that "was not subject to reduction based upon the quantity of work performed.'*" Thus, the court found the employee was not exempt. (*Id.* at p. 400, italics added;

---

[5] Wedbush summarily asserts "[t]he financial advisor's guaranteed minimum compensation of double the minimum wage was not subject to reduction due to any variations in the quantity or quality of the financial advisor's work." Again, we must disagree based on the record before us.

cf. *Kettenring, supra,* 167 Cal.App.4th at pp. 513-514 [teachers who were paid a *predetermined rate*, calculated by multiplying a flat rate by the number of classroom hours taught, were paid on a salary basis because the amount was '"not subject to reduction"' based on variations in quantity of work].)

Just as in *Negri*, Wedbush's financial advisers make less money if they sell fewer products. Their commissions are not a "predetermined amount"; they therefore cannot be considered a salary.

Wedbush heavily relies on its draw payments (i.e., its recoverable advances on future commissions) to show the financial advisors' compensation was fixed and predetermined. We are not persuaded. Although *earned* commissions are wages under California law (§ 200, subd. (a)), advances on *not-yet-earned* commissions are *not*. "The essence of an advance is that at the time of payment the employer cannot determine whether the commission will eventually be earned because a condition to the employee's right to the commission has yet to occur or its occurrence as yet is otherwise unascertainable. *An advance, therefore, by definition is not a wage* because all conditions for performance have not been satisfied." (*Steinhebel v. Los Angeles Times Communications, LLC* (2005) 126 Cal.App.4th 696, 705, italics added.)[6]

---

[6]     If Wedbush's draws on future commissions were wages, Wedbush's recoupment of those draws would violate section 221, which makes it "unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." This section "prohibits an employer from deducting amounts from an employee's wages, even as a setoff for amounts clearly owed by the employee," and "reflects 'California's strong public policy favoring the protection of employees' wages,' including amounts earned through commissions on sales." (*Sciborski v. Pacific Bell Directory* (2012) 205 Cal.App.4th 1152, 1166.) "Because a commission is not earned until the express contractual conditions are met, Labor Code section 221 does not prohibit an employer from recouping the advance if the conditions are not satisfied. However, once the express contractual conditions are satisfied, the commission is considered a wage and an employer cannot recoup the commission once it has been paid to the employee." (*Id.* at p. 1167.)

An advance is not a wage. Wedbush therefore cannot rely on its advances to satisfy the salary basis test. The salary basis test requires employers to *pay* their employees at least double the minimum wage, not *loan* them that amount. Since Wedbush recoups the advances from future commissions, it does not pay *wages* (much less a salary) equivalent to twice the minimum wage. (See also *Takacs v. A.G. Edwards and Sons, Inc.* (S.D.Cal. 2006) 444 F.Supp.2d 1100, 1107-1110 (*Takacs*) [financial consultants who received commissions plus recoverable draws were not paid on salary basis because compensation was not paid "free and clear," but rather "was required to be repaid in subsequent months"].) [7]

On a final note, although there is conflicting evidence in the record as to what happens if a financial advisor's employment is terminated before he or she has repaid all draws, we note that to the extent Wedbush forces its employees to repay advances at termination, any such policy or practice would be particularly problematic, as an employee could conceivably work full-time, yet earn nothing at all. For example, suppose Wedbush hired an investment advisor who, for one reason or another, sold no products for the first three months of his or her employment, despite working 50 hours

---

[7] Wedbush argues *Takacs* is no longer good law because it predates a 2006 Department of Labor opinion letter finding that financial advisors who received a guaranteed minimum salary that met or exceeded the FLSA's minimum salary requirement for the administrative exemption, plus commissions and asset management fees, were subject to the administrative exemption. (DOL, Wage & Hour Division Opn. Letter No. FLSA2006-43 (Nov. 27, 2006) pp. 1, 2, 7-8.) That opinion letter is inapplicable here because unlike Wedbush's financial advisors, the employees discussed in the opinion letter were paid a base salary and were *never* asked to repay any portion of the minimum salary if they did not earn sufficient commissions or fees. (*Id.* at pp. 3, 7-8, fn.5.) Wedbush's reliance on *Pontius v. Delta Financial Corp.* (W.D.Pa., Mar. 20, 2007, No. 04-1737) 2007 WL 1496692, is equally misplaced, because the plaintiffs there were "paid a base salary plus commissions, with commissions earned subject to off-set for failure to meet a minimum sales goal in a prior pay-period." (*Id.*, at p. *2.) Here, the financial advisers were not paid a base salary; they were paid commissions.

per week.[8]  Because the investment advisor earned zero commissions, Wedbush advanced the employee the equivalent of twice the monthly minimum wage for those first three months.  If the investment advisor's employment is terminated at the end of that period, and if Wedbush forced repayment of all advances after the employee worked more than full-time for those months, that employee would receive net zero compensation for the time he or she worked.

Such an arrangement would not only fail the salary basis test; it would violate state minimum wage requirements.  (See Division of Labor Standards Enforcement (DLSE) Enforcement Policies and Interpretations Manual (rev. Aug. 2019) § 34.2 at <https://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf > [as of Nov. 4, 2020], archived at <https://perma.cc//7DGZ-53AL ["If [a non-exempt] employee receives a draw against commissions to be earned at a future date, . . . [a]dvances may only be recovered at termination . . . to the extent that the advances exceed the minimum wage and overtime requirements"]; *Stein v. HHGREGG, Inc.* (6th Cir. 2017) 873 F.3d 523, 536 [allegation that employer required employees to pay back commission advances at termination was sufficient to support FLSA claim for failure to pay minimum wage].)

For these reasons, we conclude Wedbush's compensation structure does not satisfy the salary basis test, and the administrative exemption thus does not apply.

---

[8]  According to Wedbush's corporate policy, "[i]t is expected that exempt full-time employees [including financial advisors] average more than 40 hours per week."

**DISPOSITION**

The judgment is reversed, and the case is remanded to the trial court for further proceedings.  Appellants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


GOETHALS, J.

WE CONCUR:


ARONSON, ACTING P. J.


THOMPSON, J.

13